IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MSP Recovery Claims, Series LLC, et al., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No: 18 C 00379 |
| | ) | |
| Mallinckrodt ARD Inc., et al., | ) | |
| | ) | |
| *Defendants*. | ) | Judge Frederick J. Kapala |

**ORDER**

Defendants' motions to dismiss [64] [68] are granted. Counts I, II, and IV are dismissed without prejudice. The court grants plaintiffs leave to replead these counts within 45 days of the date of this order. Count III is withdrawn.

**STATEMENT**

Plaintiffs, MSP Recovery Claims, Series LLC; MAO-MSO Recovery II, LLC; MSP Recovery, LLC; and MSPA Claims 1, LLC, filed a class action complaint[1] against defendants, Mallinckrodt plc; Mallinckrodt ARD, Inc., which was formerly known as Questcor Pharmaceuticals, Inc.;[2] and United Biosource Corp. ("UBC"), pursuant to federal and state antitrust and consumer protection laws. Before this court are defendants' motions to dismiss. For the reasons stated below, defendants' motions to dismiss are granted.

**I. BACKGROUND**

The following facts are drawn from the allegations in the complaint. Because this case comes before the court pursuant to motions to dismiss, the court accepts all allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiffs.

---

[1] The operable complaint at issue in the motions to dismiss is the Corrected Class Action Complaint, ECF No. 10, filed on October 31, 2017.

[2] Questcor changed its name to Mallinckrodt ARD, Inc. in 2014. At various points in their complaint and briefing plaintiffs use the name Questcor when referring to Mallinckrodt ARD, Inc., even though Mallinckrodt plc and Mallinckrodt ARD, Inc. call themselves Mallinckrodt in their briefing. In order to maintain consistency, the court will refer to Mallinckrodt plc, Mallinckrodt ARD, Inc. and Questcor individually and collectively as Questcor. As Mallinckrodt ARD, Inc. is a subsidiary of Mallinckrodt plc, for purposes of this opinion, the court treats Mallinckrodt ARD, Inc., Mallinckrodt plc, and Questcor as all having participated in the alleged conduct, just as plaintiffs do in the complaint.

Acthar is an adrenocorticotropic hormone ("ACTH") drug, which is used to treat a rare pediatric illness and is the only ACTH drug sold in the United States. Compl. ¶ 2. The illness, infantile spasms, involves dangerous seizures during the first two years of a child's life. Id. ¶ 26. Questcor was a biopharmaceutical company at all times relevant to this action. In 2001, Questcor acquired Acthar. Id. ¶ 25. At that time, the average price of Acthar was $40 per vial. Id. ¶ 3. After the acquisition, Questcor sought to eliminate threats to its monopoly in the ACTH drug market. One method of preserving its monopoly is through the acquisition of the rights to the only viable alternative to Acthar, called Synacthen, an ACTH drug sold outside the United States, developed by Novartis AG ("Novartis"). Id. ¶¶ 32-33. In June 2013, Questcor outbid other companies to acquire the rights to Synacthen by paying nearly ten times what the next closest bidder offered. Id. ¶ 35. Plaintiffs allege that the domestic release of Synacthen would have instantly created competition for Acthar, resulting in a lower price for the drug. Id. ¶ 37. However, Questcor chose instead not to bring Synacthen to market.[3] Id. ¶¶ 37-38, 53. Based on this conduct, the Federal Trade Commission ("FTC") brought a complaint alleging, in part, antitrust violations against Questcor. Id. ¶ 39. The parties settled for $100 million. Id. ¶ 40. Plaintiffs allege that this anticompetitive conduct harmed the market by preventing consumers from purchasing a lower-cost alternative to Acthar. In addition, around 2007 Questcor implemented an exclusive sales and distribution agreement (the "exclusive dealing arrangement") with one exclusive specialty pharmacy distributor, Curascript. Id. ¶ 27. Plaintiffs allege that the exclusive dealing arrangement preserved and extended Questcor's monopoly power and allowed it to maintain and extend the price of Acthar to over $34,000 per vial. Id. ¶ 28. These agreements with Novartis and Curascript make up the anticompetitive conduct underlying plaintiffs' complaint.[4]

Plaintiffs allege that they are assignees of recovery rights originally held by various Medicare Advantage Organizations ("MAOs"), which are private health insurers that have entered into contracts with Centers for Medicare and Medicaid Services ("CMS") to provide certain Medicare benefits to Medicare beneficiaries. Id. ¶ 19. Part C of the Medicare Act creates the Medicare Advantage program that allows Medicare-eligible persons to elect to have a MAO step into the shoes of CMS and provide Medicare benefits for the electing persons. Id. ¶ 20; see 42 U.S.C. § 1395w-27. The relevant benefits to this action come from Part D, which creates the Medicare Prescription Drug

---

[3] While not alleged in the complaint, plaintiffs argue in their oppositions to defendants' motions to dismiss that the Synacthen Acquisition was part of a horizontal price-fixing conspiracy between Questcor and Novartis.

[4] Plaintiffs allege that UBC is a Delaware corporation and is a wholly-owned subsidiary of Express Scripts Holding Company, also a Delaware corporation. Plaintiffs include only two substantive paragraphs in their complaint that explain UBC's role in the purported price-fixing and monopolization scheme. See Compl. ¶¶ 60, 62. Aside from these allegations, the only facts alleged about UBC are those in which plaintiffs group Questcor and UBC together as "Defendants." As a general matter, "[a] complaint based on a theory of collective responsibility must be dismissed." Bank of Am., N.A. v. Knight, 725 F.3d 815, 818 (7th Cir. 2013). Thus, "group pleading"—where a plaintiff's allegations simply lump defendants together without describing which defendant is responsible for what conduct or when each defendant participated in that unspecified conduct—is insufficient at the motion-to-dismiss stage. While the court does not dismiss any of plaintiffs' claims for this reason alone, many of the pleading defects discussed in the opinion concern plaintiffs' failure to specify the role that each defendant played in the alleged anticompetitive acts. Plaintiffs are advised to cure these defects in any amended complaint, should they replead.

Benefit program, which subsidizes costs for eligible prescription drugs. Compl. ¶ 21. CMS pays the MAO a fixed fee per enrollee, and the MAO provides at least the same benefits as an enrollee would receive under Medicare. Id. ¶ 20. In order for a MAO to be paid by CMS, the MAO negotiates the price of the Part D-eligible drug with the manufacturer directly. Id. ¶ 23; see 42 U.S.C. § 1395w-153(a); 42 U.S.C. 1395w-102(d); 42 C.F.R. § 423.100 (defining "[n]egotiated prices"). The Medicare Act as well as the Code of Federal Regulations together set forth the requirements that MAOs and manufacturers must utilize when negotiating the price of Part D-eligible drugs. Compl. ¶ 22; see 42 C.F.R. § 423.104(g)(1). Furthermore, if the MAO delegates any part of its responsibilities to a "downstream" intermediary—such as Curascript's distribution of Acthar—the MAO must substantially oversee the delegated responsibilities. Compl. ¶ 22; see 42 C.F.R. § 423.505(i)(4). This includes accepting the price negotiated between the MAO and manufacturer. See id.[5]

Plaintiffs bring this action alleging that the MAOs were overcharged for Acthar based on defendants' alleged monopolistic conduct. Plaintiffs allege unlawful maintenance of monopoly under 15 U.S.C. § 2 (Count I), unreasonable restraint of trade under 15 U.S.C. §§ 1, 3 (Count II), unjust enrichment (Count III), and violation of state antitrust and consumer protection laws (Count IV). Questcor and UBC separately have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim against them.

## II. ANALYSIS

When deciding a defendant's motion to dismiss, a court accepts all of the well-pleaded allegations of a complaint as true and draws all reasonable inferences in favor of the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Under the Federal Rules, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." Id. at 679.

### A. Prudential Standing[6]

Defendants challenge plaintiffs' prudential standing to bring this action, arguing that the Complaint should be dismissed because plaintiffs have not alleged any facts regarding any specific

---

[5] Defendants dispute that the relevant statutory authority requires the MAO to negotiate directly with the manufacturer, pointing to the plain language of the statute that merely requires that the MAO "provide enrollees with access to negotiated prices used for payment for covered part D drugs." 42 U.S.C. § 1395w-102(d)(1)(A); see also 42 C.F.R. § 423.104(g)(1) (requiring that Part D sponsors such as MAOs "provide its Part D enrollees with access to negotiated prices for covered Part D drugs").

[6] The Seventh Circuit has previously described "prudential standing" as a doctrine that has various definitions. The definition that is most relevant to this case concerns "the situation in which the injury on which the plaintiff founds his suit is derivative from the injury suffered by the defendant's immediate victim. Often the harm from a harmful act will ramify far beyond that victim." MainStreet org. of Realtors v. Calumet City, Ill., 505 F.3d 742, 745 (7th Cir. 2007).

assignment to plaintiffs by the MAOs in connection with any specific Medicare beneficiary. Article III standing may be satisfied by assessing an indirect injury. But even if a plaintiff has suffered an indirect injury, while Article III standing is always a requirement, a plaintiff may meet the standards for constitutional standing but fail to satisfy prudential standing requirements. Rawoof v. Texor Petroleum Co., Inc., 521 F.3d 750, 756 (7th Cir. 2008). The prudential standing consideration requires that, "in general, the plaintiffs must assert their own legal rights and interests, and cannot rest their claims to relief on the legal rights or interests of third parties." G & S Holdings LLC v. Continental Cas. Co., 697 F.3d 534, 540 (7th Cir. 2012) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)). This "real party in interest" rule is similar to the requirement imposed by Federal Rule of Civil Procedure 17. Act II Jewelry, LLC v. Wooten, 301 F. Supp. 3d 905, 911 (N.D. Ill. 2018) (citing Arbaugh v. Y & H Corp., 546 U.S. 500, 511 (2006). The purpose of this rule is to protect defendants against subsequent actions that are brought by parties that are actually entitled to recover. See RK Co. v. See, 622 F.3d 846, 850 (7th Cir. 2010). On a Rule 12(b)(6) motion, a plaintiff must plausibly allege that they are the real party in interest, such that they are the proper plaintiff to be bringing suit. See Family & Children's Ctr., Inc. v. Sch. City of Mishawaka, 13 F.3d 1052, 1058 (7th Cir. 1994).[7]

As it turns out, a court in this district has already held that these same plaintiffs lacked prudential standing to assert claims as assignees of the same MAOs because plaintiffs' only allegations regarding these alleged assignments in that case were that "[n]umerous MAOs have assigned their recovery rights to assert the causes of action alleged in this Complaint to Plaintiff. As part of those assignments, Plaintiff is empowered to recover reimbursement of Medicare payments made by the MAOs that should have been paid, in the first instance, by Defendants." MAO-MSO Recovery II, LLC v. Allstate Insurance Co., Nos. 17-cv-01340, 17-cv-02370, 2018 WL 1565583, at *4 (N.D. Ill. Mar. 30, 2018) (Wood, J.). The Court noted that these allegations lacked "the identity of the MAO(s) that assigned the rights; which Plaintiff received assignments from which MAO(s); the date, format, or any other characteristic of the assignment; the actual rights assigned; or whether those assignments include claims against the particular Defendants named in the complaint." Id. The Court concluded that the plaintiffs did not plausibly plead allegations regarding these alleged assignments, just as "seven other district court judges across the country" had found in complaints that contained identical allegations. Id.

---

[7] "Because prudential standing does not implicate a court's subject-matter jurisdiction, arguments regarding lack of prudential standing are properly evaluated under the rubric of a motion for failure to state a claim under Rule 12(b)(6)." MAO-MSO Recovery II, LLC v. Allstate Insurance Co., Nos. 17-cv-01340, 17-cv-02370, 2018 WL 1565583, at *4 (N.D. Ill. Mar. 30, 2018) (Wood, J.) (citing Siegel v. HSBC Holdings PLC, No. 15-cv-10139, 2017 WL 3521387, at *6 (N.D. Ill. Aug. 14, 2017)). The parties assume that the Twombly pleading standard applies to plaintiffs' claims under state law. But while the "real party in interest" test looks to state law to determine whether the proper party is bringing suit under state law claims, see Frank v. Hadesman & Frank, Inc., 83 F.3d 158, 159 (7th Cir. 1996), it is not clear that a federal court can permissibly apply pleading standards more rigorous than Twombly to the state-law claims at issue, see Llano Fin. Grp., LLC v. Lendzion, No. 15 C 7091, 2016 WL 930660, at *4 (N.D. Ill. Mar. 11, 2016). However, the court need not determine the exact contours of the "real party in interest" test at this time, given plaintiffs' deficient allegations regarding the purported assignments.

4

Here, plaintiffs' allegations concerning the alleged assignments are almost identical to those in Allstate Insurance: "Numerous MAOs across the United States have assigned their rights to Plaintiffs to recover for direct payments related to Acthar. As a result, Plaintiffs have standing to pursue the claims of its assignors." Compl. ¶ 14. The only other allegations in the complaint concerning these assignments are the conclusory assertions that "[t]he Assignor MAOs paid the[ ] inflated prices," id. ¶ 30, and "[h]aving been assigned the injured caused by th[e] anti-competitive conduct, Plaintiffs thus have standing as direct payers via their MAO Assignors," id. ¶ 23. Indeed, allegations substantially similar to these appeared in at least eleven other complaints filed by these plaintiffs in district courts across the country that were dismissed on the same or similar grounds.[8] Further, the only material difference between Allstate Insurance and the instant case is that plaintiffs attached Exhibit A to their opposition to defendants' motions to dismiss. Exhibit A, titled "Pharma Exhibit A Funnel:66," contains 36 pages of assignments concerning specific purchases of Acthar by MAOs in various states from "some of the entities in the pharmaceutical distribution chain." Even if the court were to consider Exhibit A,[9] this laundry list of code numbers does not plausibly allege the rights of which each specific plaintiff is resting its claims to relief. While the list contains purchase prices and where such purchases were processed, nowhere on the list is the name of a single plaintiff, defendant, or MAO. The court cannot discern from this list which MAOs assigned which assignments to which assignees in which jurisdictions. Neither the complaint nor Exhibit A contain

---

[8]The court in Allstate Insurance helpfully lists these eleven cases:

MAO-MSO Recovery II, LLC v. Mercury General, Nos. CV 17-02525, CV 17-2557 (C.D. Cal. Nov. 2, 2017) (dismissing claims for lack of Article III standing because Plaintiffs pleaded no facts to support the purported assignments); MAO-MSO Recovery II, LLC v. Farmers Ins. Exch., Case Nos. 2:17-cv-2522 and 2:17-cv-2559 (C.D. Cal. Nov. 20, 2017) (same); MAO-MSO Recovery II, LLC v. USAA Cas. Ins. Co., Case No. 17-cv-20946 (S.D. Fla. Jan. 3, 2018) (same); MAO-MSO Recovery II, LLC v. State Farm Mut. Auto Ins. Co., Case Nos. 1:17-cv-01537 and 1:17-cv-01541 (C.D. Ill. Jan. 9, 2018) (same); MAO-MSO Recovery II, LLC v. Am. Family Mutual Ins. Co., Case Nos. 17-cv-175-jdp and 17-cv-262-jdp (W.D. Wis. Feb. 12, 2018) (dismissing claims for lack of prudential standing because Plaintiffs pleaded no facts to support the purported assignments); MAO-MSO Recovery II, LLC v. Nationwide Mutual Ins. Co., Case Nos. 2:17-cv-263 and 2:17-cv-164 (S.D. Ohio Feb. 28, 2018) (dismissing claims under 12(b)(6) because plaintiffs failed to adequately plead that they are assignees of various MAOs' recovery and reimbursement rights).

2018 WL 1565583, at *4 n. 9. Further, in defendants' Notice of Supplemental Authority, defendants list four cases that the court finds similarly instructive to the facts at hand, where these district courts dismissed plaintiffs' claims because plaintiffs failed to plead the validity of the MAOs' assignments. See MAO-MSO Recovery II, LLC v. Progressive Corp., No. 17-cv-686, 2018 WL 4075880 (N.D. Ohio Aug. 27, 2018); MAO-MSO Recovery II, LLC v. Progressive Corp., No. 17-cv-390, 2018 WL 3438950 (N.D. Ohio July 17, 2018); MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co., No. 17-cv-1541, 2018 WL 2392827 (C.D. Ill. May 25, 2018); MAO-MSO Recovery II, LLC v. Farmers Ins. Exch., No. 17-cv-2522, 2018 WL 2106467 (C.D. Cal. May 7, 2018). While these cases involve different claims than those here, these district courts all dismissed plaintiffs' claims for want of demonstrating validity of the MAOs' purported assignments.

[9]"It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss, nor can it be amended by the briefs on appeal." Thomason v. Nachtrieb, 888 F.2d 1202, 1205 (7th Cir. 1989).

5

facts that "nudge their allegations regarding assignments across the line from conceivable to plausible as required to survive a Rule 12(b)(6) motion." Id. As stated well by one of the other district courts ruling on one of plaintiffs' nationwide suits, the "fundamental flaw with plaintiffs' pleadings is that there are no factual allegations tracing any individual assignor MAO's injury to any single defendant." MAO-MSO Recovery II, LLC v. Farmers Ins. Exch., No. 217CV02522CASPLAX, 2018 WL 2106467, at *9 (C.D. Cal. May 7, 2018).

The court dismisses the complaint without prejudice for lack of prudential standing, and the court grants plaintiffs leave to replead to include additional factual allegations concerning the alleged assignments if plaintiffs can do so consistent with their obligations under Rule 11 of the Federal Rules of Civil Procedure. Plaintiffs' amended complaints should include allegations sufficient to demonstrate "that for every named defendant there [is] at least one named plaintiff who can assert a claim directly against that defendant." Farmers Ins. Exch., 2018 WL 2106467, at *10.

### B. Antitrust Standing

The court dismisses the complaint without prejudice based on plaintiffs' failure to adequately allege prudential standing. However, in an effort to conserve time and resources and for the benefit of the parties in future proceedings, the court will comment on the issue of antitrust standing as it applies to plaintiffs' contention that the MAOs can be described as "direct purchasers" of Acthar.

In addition to Article III standing,[10] the Supreme Court has found additional standing limitations born from the Sherman Act as part of a separate standing doctrine known as "antitrust standing." See Loeb Indus., Inc. v. Sumitomo Corp., 306 F.3d 469, 480 (7th Cir. 2002) (describing the range of antitrust standing limitations that have emerged from federal law).[11] In Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977), the Supreme Court held that only direct purchasers from alleged antitrust violators may bring federal antitrust actions.[12]

---

[10] The court is unable to make any determination as to how Questcor's arrangements with Novartis, UBC, and Curascript may affect a constitutional standing analysis. Other than making conclusory allegations that Questcor has entered into exclusive arrangements with these entities, see Compl. ¶ 60, plaintiffs have related nothing about the components of these arrangements or about the rights and obligations of the parties involved. Nevertheless, the court leaves open the possibility after discovery (or, perhaps, after newly-pled facts in an amended complaint) that plaintiffs can show that the MAOs stand in direct purchasing relationships with Questcor, depending on what the evidence uncovers about the structure of the exclusive distribution arrangement.

[11] The Supreme Court found an additional antitrust standing limitation in Associated General Contractors of California, Inc. v. California State Council of Carpenters ("AGC"), 459 U.S. 519 (1983), in which the Supreme Court held that courts must engage in a "proximate cause" analysis to determine whether a plaintiff is a "proper party" to bring suit. The court at this time makes no finding on whether plaintiffs satisfy the requirements of AGC as applied to either their federal or state antitrust and consumer protection claims.

[12] There are recognized exceptions to Illinois Brick. But other than making vague references to a conspiracy, Compl. ¶ 51, and co-conspirators, id. ¶ 56, plaintiffs have done little to allege that their federal claims fall within any of the Illinois Brick exceptions. Should plaintiffs choose to replead, plaintiffs must expand on the relationship between Questcor, UBC, Curascript, or any other "intermediary" to determine whether any exception applies, if plaintiffs can do so consistent with their obligations under Rule 11 of the Federal Rules of Civil Procedure.

Plaintiffs argue that Illinois Brick does not apply to this case because the MAOs are direct, not indirect purchasers of Acthar. Although the MAOs paid the intermediary for Acthar, plaintiffs contend that the MAOs are, "for all intents and purposes, direct purchasers of Acthar" because, under 42 U.S.C. § 1395w-153, the MAOs and defendants "were required to enter into a contract directly in order to obtain coverage of Acthar on Medicare Part D Plans." According to plaintiffs, 42 U.S.C. 1395w-102(d)—which states that MAOs "shall provide enrollees with access to negotiated prices used for payment for covered part D drugs"—supports their contention that the contract required by § 1395w-153 must include the particular price negotiated by the MAOs and defendants.

Although mindful of plaintiffs' policy argument concerning whether negotiated prices born out of required contracts under § 1395w-153 can be described as part of a direct-purchasing relationship, plaintiffs surprisingly do not support this contention with allegations related to their own negotiations. As such, the court is unable to determine whether plaintiffs' characterization of the MAOs' purchasing relationship from Questcor does not run afoul the Supreme Court's holding that

> ample justification exists for our stated decision not to 'carve out exceptions to the [direct purchaser] rule for particular types of markets.' The possibility of allowing an exception, even in rather meritorious circumstances, would undermine the rule . . . [E]ven assuming that any economic assumptions underlying the Illinois Brick rule might be disproved in a specific case, we think it an unwarranted and counterproductive exercise to litigate a series of exceptions.

Kansas v. Utilicorp United, Inc., 497 U.S. 199, 216-17 (1990) (quoting Illinois Brick, 431 U.S. at 744); see also Del. Valley Surgical Supply, Inc. v. Johnson & Johnson, 523 F.3d 1116, 1118, 1122-23 (9th Cir. 2008) (concluding that the presence of separate agreement between the manufacturer and the intermediary could not upend the "bright line rule for identifying the proper plaintiff when an antitrust violation occurs in a multi-tiered distribution system"); cf. In re Apple Iphone Antitrust Litig., 846 F.3d 313, 324 (9th Cir. 2017) (holding that manufacturer/producer was also distributor and thus Delaware Valley did not apply).

For example, the complaint contains no allegations of the nature of supposed negotiations between the MAOs and Questcor. Plaintiffs do not allege when these negotiations took place, whether Acthar was the subject of these negotiations, what intermediary would be paid as a result of these negotiations, or—mostly of the court's curiosity—why the MAOs would negotiate for an inflated price of $34,000 per vial of Acthar.[13] Further, the relevant regulation governing negotiations for Acthar's price, 42 C.F.R. § 423.104(g), requires "access to negotiated prices for covered Part D drugs." 42 C.F.R. § 423.104(g) (emphasis added). Plaintiffs only provide conclusory allegations that § 423.104(g) actually requires any price, and alleges even less about whether the MAOs actually

---

[13] Plaintiffs state in their briefing that their claim "arises out of the price set by the Defendants in their contract with the MAO. The overcharge happens long before the drug is actually purchased from the intermediary but instead at the negotiation table between the Defendants and MAO." Presumably, the MAOs believed that the price ultimately negotiated was too high, hence their filing of this suit. There appears some inconsistency in plaintiffs complaining about a price that they played a role in setting. The parties would benefit by advising the court of the nature of the negotiations which determined how this inflated price came to be.

reimbursed the intermediary at the price negotiated between the MAOs and defendants.

The court finds that plaintiffs have not plausibly alleged in this complaint that they have direct-purchaser standing to bring its claims. Should plaintiffs choose to replead, plaintiffs shall correct the deficiencies in their allegations as noted in this opinion.

### C. State-Law Antitrust and Consumer Protection Claims

In addition, in order to guide plaintiffs' repleading, the court will touch upon some of the issues disputed by the parties with respect to plaintiffs' state-law antitrust and consumer protection claims.

### 1. Article III Standing for Claims of Unnamed Class Members

Questcor challenges plaintiffs' Article III standing to bring state-law claims on behalf of the unnamed class members. As a prefatory matter the court must decide when to address Questcor's argument. In doing so, the court finds the analysis contained within In re Herbal Supplements Marketing & Sales Practices Litigation, No. 15-cv-5070, 2017 WL 2215025, at *6 (N.D. Ill. May 19, 2017) (St. Eve, J.) and McDonnell v. Nature's Way Products, LLC, No. 16 C 5011, 2017 WL 1149336, at *5 (N.D. Ill. Mar. 28, 2017) persuasive and opts to defer engaging this issue. Thus, while plaintiffs are still required to plausibly allege their Article III standing to bring their own claims, the court will not need to address Article III standing with respect to claims based on injuries incurred by unnamed class members until some later appropriate stage in these proceedings, probably when plaintiffs move for class certification.

### 2. Statutory Limitations

In addition to the Article III argument discussed in the previous section, defendants also challenge plaintiffs' state-law claims based on plaintiffs' failure to comply with or allege requirements particular to each state's antitrust laws. The ten states implicated by the complaint are California, Florida, Illinois, Kansas, Massachusetts, Michigan, Minnesota, Mississippi, New York, and Tennessee.[14] Defendants cite limitations specific to some of these states that defendants contend defeat plaintiffs' state-law claims. The court will briefly comment upon a couple of these specific limitations in order to help guide plaintiffs' repleading, should they choose to do so. However, the complaint as currently formulated lacks the requisite facts necessary for the court to make more certain determinations as to the viability of plaintiffs' state-law claims. The court does not intend for this opinion to address every possible issue germane to these claims.

---

[14]Curiously, in plaintiffs' opposition to defendants' motions to dismiss, plaintiffs reduce the number of states implicated in Count IV from 21 to 18, including Puerto Rico. However, of those 18, 8 of them (Connecticut, Delaware, Indiana, Maryland, Ohio, Pennsylvania, Puerto Rico, and Texas) are not implicated in the complaint. This is an impermissible attempt to amend the complaint, see Thomason, 888 F.2d at 1205, and accordingly, the court will not consider these 8 states as being a part of plaintiffs' Count IV.

### a. California, Florida, Kansas, Massachusetts, Michigan, Minnesota, Mississippi, New York, and Tennessee

For California, Michigan, Minnesota, Mississippi, and New York, defendants argue that "[t]he antitrust laws of these states limit their reach to activities which occur within the state." Similarly, for Florida, Massachusetts, and Tennessee, defendants argue that these states' consumer protection statutes are limited to actions concerning "intrastate conduct." For Kansas, defendants offer no state-specific limitations.

As discussed earlier in the opinion's section on prudential standing, plaintiffs have failed to sufficiently allege that they have been assigned the rights to reimbursement from the MAOs. The court expects, should plaintiffs replead to correct the prudential standing deficiency, that these state-specific limitations will also be addressed.

### b. Illinois

The Illinois Antitrust Act provides that "no person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act, with the sole exception of this State's Attorney General." 740 ILCS 10/7(2). Plaintiffs make no argument that they have standing under Illinois law except that they insist that they are direct purchasers of Acthar. As discussed in this opinion's section on plaintiffs' antitrust standing, the court will not accept plaintiffs' characterization of the MAOs' relationship to Mallinckrodt as a direct-purchasing relationship at this time.

### III. CONCLUSION

For the above reasons, defendants' motions to dismiss are granted. Counts I, II, and IV are dismissed without prejudice. The court grants plaintiffs leave to replead to demonstrate that they have standing to bring these claims. Finally, in their briefings plaintiffs withdrew their unjust enrichment claim in Count III.

Date: 1/25/2019

ENTER:

_____

FREDERICK J. KAPALA

District Judge