IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

MSP Recovery Claims, Series LLC, )
et al., )
 )  Case No. 3:20 C 50056
      Plaintiffs, )
 )  Judge John Z. Lee
      v. )
 )
Mallinckrodt ARD Inc., et al. )
 )
      Defendants. )

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs, consisting of MSP Recovery Claims, Series LLC ("MRCS"), MAO-MSO Recovery, II, LLC, Series PMPI, and MSP Claims 1, LLC, filed an amended class action complaint against Defendants Mallinckrodt plc and Mallinckrodt ARD, Inc. (together, "Mallinckrodt"), as well as Express Scripts Holding Company, Express Scripts, Inc., Curascript, Inc., and United Biosource LLC (together, "the Express Scripts Entities"), alleging that Defendants have violated various federal and state antitrust statutes and consumer-protection laws by artificially inflating the price of the drug Acthar. Defendants have filed two motions to dismiss. For the reasons set forth below, those motions are granted.

## **Background**[1]

The specialty drug Acthar is an adrenocorticoptropic hormone currently

---

[1] The following facts are taken from Plaintiffs' amended complaint and are accepted as true at this stage. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (stating that, at the motion-to-dismiss stage, the court "accept[s] as true all well-pleaded facts alleged").

approved by the FDA for various uses, including the treatment of certain rare illnesses such as infantile spasms and nephrotic syndrome. First Am. Compl. ("FAC") ¶¶ 106–109, ECF No. 165.

Medicare Advantage plans ("MA Plans") are third-party payers that provide Medicare benefits to their beneficiaries. *Id.* ¶ 1. Plaintiffs allege the Defendants took actions to force these MA Plans to pay supra-competitive prices for Acthar. Certain of these MA Plans have assigned to Plaintiffs their rights to recover for the alleged overpayment. By way of example, MRSC asserts that it has obtained assignments from (1) SummaCare, Inc., (2) EmblemHealth Services Company, (3) ConnectiCare, Inc.,[2] (4) University Health Care MSO, Inc. ("UNHC"), and (5) Alianza Profesional de Cuidado Meidco ("APCM"), *id.* ¶¶ 16–20. MAO-MSO Recovery II claims that it has an assignment from Preferred Medical Plan, Inc. ("PMPI"), *id.* ¶¶ 65–67; and MSPA Claims 1 asserts an assignment from Professional Health Choice ("PHC"), *id.* ¶¶ 69–73. Between 2013 and 2017, the MA Plans that assigned their rights to Plaintiffs paid $125,550,620.09 for Acthar prescriptions on behalf of their beneficiaries. *Id.* ¶ 6.

Plaintiffs claim that the Defendants have engaged in certain monopolistic and anti-competitive behavior to artificially inflate the price of Acthar. *Id.* ¶ 7.

---

[2] The Defendants, noting that the EmblemHealth and ConnectiCare assignments took effect after Plaintiffs filed their original complaint (but before they filed their amended complaint), contend that those assignments "are insufficient to convey constitutional standing to Plaintiffs." Mem. in Supp. of Mallinckrodt's Mot. to Dismiss at 4, ECF No. 188; *see* Mem. in Supp. of Express Scripts Entities' Mot. to Dismiss at 13–14, ECF No. 191. But, for reasons discussed below, the Court is not persuaded that Plaintiffs' constitutional (or prudential) standing depends on the EmblemHealth and ConnectiCare assignments.

Specifically, Plaintiffs assert that Mallinckrodt (formerly, Questcor Pharmaceuticals), which manufactures and sells Acthar, acquired the rights to Acthar's only viable alternative, Synacthen, and then chose to withhold it from the market in order to maintain its monopoly pricing. *Id.* ¶¶ 163–183. Mallinckrodt agreed to pay $100 million to the Federal Trade Commission to settle claims that it violated antitrust laws by purchasing the rights to Synacthen. *Id.* ¶ 179.

According to Plaintiffs, Mallinckrodt also entered into two exclusive agreements relating to Acthar distribution, one that made CuraScript the exclusive distributor of Acthar, and one that made United Biosource the exclusive operator of the "Acthar Support & Access Program," through which all Acthar prescriptions must be obtained, *id.* ¶¶ 131–33. Plaintiffs assert that these agreements effectively eliminated any incentive for Express Scripts Holding Company and Express Scripts, Inc. (collectively, "ESI")—one of the largest pharmacy benefit managers in the United States and an affiliate of CuraScript and United Biosource—to negotiate lower prices for Acthar on behalf of its clients. *Id.* ¶¶ 31, 153. Since 2001, Acthar's end-payer price has grown by 107,400%. *Id.* ¶ 146.

Based on this conduct, Plaintiffs allege that Mallinckrodt and the Express Scripts Entities violated multiple sections of the Sherman Act, *see* 15 U.S.C. §§ 1–3 (Counts I and II), various state antitrust laws (Count III), and various state consumer-protection laws (Count IV). FAC at 42–121. Plaintiffs seek injunctive relief as to their federal claims and damages and injunctive relief as to their state claims. *Id.* ¶¶ 203, 212, 220, 446.

Mallinckrodt and the Express Scripts Entities have each filed motions to dismiss Plaintiffs' amended complaint. *See* Mallinckrodt's Mot. to Dismiss, ECF No. 187; Mem. in Supp. of Mallinckrodt's Mot. to Dismiss, ECF No. 188; Express Scripts Entities' Mot. to Dismiss, ECF No. 190; Mem. in Supp. of Express Scripts Entities' Mot. to Dismiss, ECF No. 191.

### **Legal Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In this way, the complaint must put the defendants on "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In addition, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678).

4

## Analysis

I.  **Prudential Standing**

   A.  **MSP Recovery Claims, Series LLC**

As Mallinckrodt points out, several of the exemplar assignments were ultimately assigned to designated subseries of MRSC that are not named plaintiffs, as opposed to MRSC itself. *See, e.g.*, FAC ¶ 63 (explaining that all rights from the assignment with SummaCare were later assigned to "Series 16-11-509, a series of MSP Recovery Claims, Series LLC"); *see generally MSP Recovery Claims, Series LLC v. Farmers Ins. Exch.*, No. 2:17-cv-02522-CAS, 2018 WL 5086623, at *13 (C.D. Cal. Aug. 13, 2018) ("Under Delaware law, an LLC may establish one or more 'series of members, managers or [LLC] interests' which 'may have separate rights, powers or duties with respect to specified property or obligations of the [LLC] or profits and losses associated with specified property or obligations' as well as a 'separate business purpose or investment objective.'" (quoting Del. Code Ann. tit. 6, § 18-215(a))).

But Mallinckrodt's argument that MRCS lacks standing to sue on behalf of its series is unpersuasive.[3] *See* Mem. in Supp. of Mallinckrodt's Mot. to Dismiss at 3–4. Delaware law "permit[s] an LLC to sue on behalf of its series if provided for in

---

[3] Although Mallinckrodt frames this issue as one of Article III standing, Mem. in Supp. of Mallinckrodt's Mot. to Dismiss at 3–4, the Court deems it more properly a matter of prudential standing. *See G&S Holdings LLC v. Continental Cas. Co.*, 697 F.3d 534, 540 (7th Cir. 2012) (stating that the "prudential limitations on the exercise of federal jurisdiction" include that, "in general, the plaintiffs must assert their own legal rights and interests, and cannot rest their claims to relief on the legal rights or interests of third parties").

5

the operating agreement." *Farmers Ins. Exch.*, 2018 WL 5086623, at *13. And, in response to Mallinckrodt's motion to dismiss, MRSC has attached its operating agreement, which states that "the Company is authorized to pursue or assert any claim or suit capable of being asserted by any designated series arising from, or by virtue of an assignment to a designated series." ECF No. 197-1 at 1. "[T]he Court construes . . . [the] filing of . . . MSP Recovery Claims, Series LLC's operating agreement as a Rule 15(d) supplemental pleading and finds it sufficient to demonstrate plaintiff's standing to assert claims on behalf of its series assignees." *Farmers Ins. Exch.*, 2018 WL 5086623, at *14.

## B. Standing to pursue injunctive relief.

The Court also rejects Defendants' argument that Plaintiffs have not plausibly alleged prudential standing to seek injunctive relief.[4] *Cf. Biomed Pharms., Inc. v. Oxford Health Plans (N.Y.), Inc.*, 775 F. Supp. 2d 730, 736 (S.D.N.Y. 2011) (where assignment "limit[ed] Biomed's right to sue . . . to actions for money damages[,] . . . the assignment provision d[id] not grant Biomed the right to seek 'declatory and/or injunctive relief'").

It is true that the assignments appear to focus on claims for damages. *See, e.g.*, FAC Ex. D, PMPI Recovery Agreement at 2, ECF No. 165-4 (stating that "MSP

---

[4] Defendants again present this issue as one of Article III standing, *see* Mem. in Supp. of. Mallinckrodt's Mot. to Dismiss at 5; Mem. in Supp. of Express Scripts Entities' Mot. to Dismiss at 11–13. But the question here is whether claims for injunctive relief were assigned to the Plaintiffs or instead retained by the assigners, a matter of prudential standing. *See RK Co. v. See*, 622 F.3d 846, 851 (7th Cir. 2010) ("[P]rudential limitations include concerns about a claim's rightful owner.").

6

Recovery's services *focus* on the analysis, identification and recovery of conditional payments that have already been made by [PMPI]." (emphasis added)); FAC Ex. M, APCM Assignment at 1, ECF No. 165-13 (stating in the preamble that "MSP Recovery desires to provide certain services to prosecute and recover *amounts owed* on the Assigned Claims." (emphasis added)).

But the Court is persuaded that language in the assignments is sufficiently broad to encompasses the injunctive relief Plaintiffs seek. For instance, the SummaCare assignment transfers "*all rights and claims* against . . . third parties . . . including claims under consumer protection statutes and laws." FAC Ex. A, SummaCare Recovery Agreement at 4, ECF No. 165-1 (emphasis added); *see also* PMPI Recovery Agreement at 3 (containing nearly identical language); FAC Ex. G, EmblemHealth Assignment Agreement at 2, ECF No. 165-7 (containing nearly identical language); FAC Ex. K, UNHC Recovery Agreement at 3, ECF No. 165-11 (containing similar language); FAC Ex. M, APCM Recovery Agreement at 2–3, ECF No. 165-13 (containing similar language).

Furthermore, the ConnectiCare assignment contains the same language, while also emphasizing that "[t]his Assignment includes *all of* Assignor's right, title and interest in and to the Assignor's any legal or *equitable* actions, rights, causes of action or lawsuits *of any nature whatsoever*, arising out of or in connection with [the Assignor's right to seek reimbursement and recover payments]." FAC Ex. I, ConnectiCare Assignment at 2, ECF No. 165-9 (emphases added).[5]

---

[5] As Defendants note, the PHC assignment Plaintiffs have attached to the amended complaint does not identify the claims that were assigned. Specifically, the agreement

7

Furthermore, while Defendants contend that the scope of Plaintiffs' assignments are limited in time and, therefore, cannot include claims for prospective injunctive relief, Plaintiffs have plausibly alleged that their rights under the assignments are ongoing. *See, e.g.*, SummaCare Recovery Agreement at 6 (explaining that the assignment, which was effective as of May 12, 2017, "shall have an initial term of one . . . year" and "shall automatically renew for successive terms of one . . . year unless terminated as set forth below"); UNHC Recovery Agreement at 6 (containing similar language); APCM Recovery Agreement at 5 (containing similar language). This is enough at the pleading stage.

Accordingly, the Court is satisfied that Plaintiffs have "allege[d] sufficient factual matter, accepted as true, to nudge [their] claim that they are assignees of the rights at issue 'across the line from conceivable to plausible.'" *MSPA Claims 1, LLC v. Allstate Ins. Co.*, No. 17 C 1340, 2019 WL 4305519, at *2 (N.D. Ill. Sept. 11, 2019) (quoting *Twombly*, 550 U.S. at 570). [6]

---

states that PHC "assign[s] and transfer[s] . . . the rights and causes of action set forth" in a specific exhibit, yet Plaintiffs have not provided the Court with that exhibit. FAC Ex. F, PHC Agreement at 1, ECF No. 165-6.

[6]   Mallinckrodt's assertion that the exemplar assignments are limited to claims under the Medicare Secondary Payer Provision also is unavailing. *See* Mem. in Supp. of Mallinckrodt's Mot. to Dismiss at 5–8. To support this contention, Mallinckrodt cites a portion of the PMPI Assignment that in fact defeats its argument. *See id.* at 7 ("[A]ll claims that have been or can be identified by MSP Recovery as being recoverable by the Client pursuant to the Medicare Secondary Payer Act *or any other contractual, statutory, equitable or legal basis, whether state or federal,* . . . and/or as a result of payments made for or on behalf of a Medicaid beneficiary or as a result of any payment(s) made through any health plan, shall be deemed Assigned Claims." (emphasis added) (quoting PMPI Recovery Agreement at 2)).

## II. Antitrust Standing

Where Plaintiffs' claims flounder are on the shores of antitrust standing. "'Antitrust standing' refers to 'doctrines that have arisen to clarify the circumstances under which a particular [entity] may recover from an antitrust violator.'" *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 810 (N.D. Ill. 2017) (quoting *Loeb Indust., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 480 (7th Cir. 2002)). "The two most prominent doctrines were set forth by the Supreme Court in *Illinois Brick Co. v. Illinois*[, 431 U.S. 720, 737 (1977)], which held that indirect purchasers are prohibited from seeking damages under federal antitrust law, and *Associated General Contractors of California, Inc. v. California State Council of Carpenters*[, 459 U.S. 519, 535 (1983)], which imposed a version of proximate causation on antitrust claims." *In re Broiler Chicken*, 290 F. Supp. 3d at 810–11.

Although states generally interpret their antitrust laws consistent with federal case law, the Supreme Court held in *California v. ARC America Corp.*, 490 U.S. 93 (1989), that state legislatures could "repeal" *Illinois Brick* and thus provide for damages under state antitrust law for indirect purchasers. *See In re Broiler Chicken*, 290 F. Supp. 3d at 811. Furthermore, in deciding whether to apply *Associated General Contractors* to state-law antitrust claims—as opposed to a different, and potentially more permissive proximate-cause test—courts look to whether the relevant states' highest courts have ruled on the issue. *See City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 759 (N.D. Ill. 2019).

Here, despite its length, Plaintiffs' amended complaint lacks sufficient facts from which the Court can assess whether Plaintiffs meet the standard laid out in *Associated General Contractors* or "even the least stringent state's 'proximate cause' test." *Id.* at 760. As Plaintiffs acknowledge, five of the seven assigners purchased Acthar from entities that have no affiliation with Defendants, including Caremark, LLC; Walgreens Specialty Pharmacy, LLC; Procare Pharmacy, LLC; and OptumRx, Inc. *See* FAC ¶¶ 241, 265, 281, 568, 670; Resp. to Mots. to Dismiss at 12 n.16, ECF No. 197. And this is difficult to square with Plaintiffs' claim that "Defendants control 100% of the [Acthar] market in . . . price," and that they "own and operate the supply chain." Resp. to Mots. to Dismiss at 12 & n.16; *see, e.g.*, *Erie Ins. Co. v. Amazon.com, Inc.*, 925 F.3d 135, 144 (4th Cir. 2019) (describing supply chains as including "manufacturers," "distributors," and "retailers."). Because it is not clear what role these intermediary entities are playing or how that role is consistent with Plaintiffs' theory of antitrust standing, the Court cannot determine whether Plaintiffs' have satisfied the proximate causation requirement under *Associated General Contractors* or some relevant lesser state standard. *See City of Rockford*, 360 F. Supp. 3d at 753 ("Until [the Court] knows the contours of [intermediary] CVS' role in supplying Acthar to [plaintiff's] employee's spouse, the Court is not able to engage in a complete application of the *AGC* factors to [plaintiff].").

To be sure, two of Plaintiffs' assigners—EmblemHealth and ConnectiCare—purchased Acthar from Accredo Health Group Inc. ("Accredo"), which Plaintiffs contend is an "ESI-affiliated entity." Resp. to Mots. to Dismiss at 12 n.15. But the

amended complaint only makes a few brief references to Accredo, which is not a Defendant in this action. FAC ¶¶ 27, 128, 132. This is not enough to plausibly establish that Accredo was a co-conspirator in the alleged conspiracy, and thus not enough to plausibly argue that EmblemHealth and ConnectiCare were entitled to sue the named Defendants for damages notwithstanding the applicability of *Illinois Brick*. *Cf. City of Rockford*, 360 F. Supp. 3d at 748–751 (discussing the "co-conspirator" exception to *Illinois Brick*). And, even setting aside *Illinois Brick*, Plaintiffs must provide more information as to Accredo's role in supplying Acthar to EmblemHealth and ConnectiCare's beneficiaries, as well as Accredo's role vis-à-vis the named Defendants, before the Court can determine whether standing plausibly exists under *AGC* or any other proximate-cause test. As such, Plaintiffs' federal and state antitrust claims (Counts I, II, and III) are dismissed.

Finally, the Court concludes that Plaintiffs' state consumer-protection claims suffer from the same shortcomings. As in *City of Rockford*, "[t]he parties put forth no argument that [*Associated General Contractors*] is irrelevant to state-law consumer protection claims." 360 F. Supp. 3d at 759 n.18; *see also In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481 (KBF), 2014 WL 4277510, at *38 (S.D.N.Y. Aug. 29, 2014) (dismissing indirect-purchaser plaintiffs' state consumer-protection claims because plaintiffs "failed to include any specific allegations of proximate cause," and "every state statute requires a direct or indirect allegation supporting proximate cause"). Thus, for purposes of this order, "the Court considers all of the state laws invoked by the [amended complaint] as state laws that implicate

11

Plaintiffs' antitrust standing." *City of Rockford*, 360 F. Supp. 3d at 759 n.18. And because, as noted above, Plaintiffs have not pleaded sufficient facts to meet even the least stringent state's proximate-cause test, the Court dismisses Plaintiffs' consumer-protection claims (Count IV).

Finally, Defendants argue that the Court should not provide Plaintiffs with another opportunity to amend their complaints. But, discovery remains ongoing, and the Court finds that Defendants would suffer no undue prejudice if Plaintiffs are permitted to file a second amended complaint to address the deficiencies outlined here. Therefore, the Court grants Plaintiffs leave to file a second amended complaint. Any such complaint must be filed within 45 days of this order.[7]

## Conclusion

For the foregoing reasons, Defendants' motions to dismiss are granted. Plaintiffs' amended complaint is dismissed without prejudice. Plaintiffs may file a second amended complaint within 45 days of this order.

ENTERED: 3/23/20

John Z. Lee

United States District Court Judge

---

[7] Because standing is a threshold issue and any amendment likely will impact the nature and scope of Plaintiffs' claims, the Court declines to address Defendants' arguments under Rule 12(b)(6) at this time.

12