**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| MSP RECOVERY CLAIMS, SERIES LLC, et al., | |
| Plaintiffs, | |
| v. | Case No. 20 CV 50056 |
| MALLINCKRODT ARD INC., et al., | Hon. John Z. Lee |
| Defendants. | Hon. Lisa A. Jensen |

**CONSOLIDATED RESPONSE MEMORANDUM
IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Plaintiffs MSP RECOVERY CLAIMS, SERIES LLC; MAO-MSO RECOVERY II, LLC; SERIES PMPI, a designated series of MAO-MSO RECOVERY II, LLC; and MSPA CLAIMS 1, LLC, respectfully submit the following consolidated response memorandum in opposition to The Express Scripts Entities' Motion to Dismiss the Second Amended Class Action Complaint (ECF Doc. 408) and Mallinckrodt ARD LLC (f/k/a Mallinckrodt ARD Inc.) and Mallinckrodt PLC's Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint (ECF Doc. 412). As discussed herein, Plaintiffs have more than adequately established both their prudential (Article III) and antitrust standing to seek relief against Defendants and have addressed the pleading deficiencies identified in this Court's prior order.

**INTRODUCTION**

On March 23, 2020, this Court granted Defendants' motion to dismiss Plaintiffs' First Amended Class Action Complaint, permitting Plaintiffs to replead in order to better allege the roles of intermediary entities within the Acthar market to Medicare Advantage Plan payers. This

Court held that such detail was necessary in order for the Court to be assured that, under the direct/indirect purchaser principles of *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), and *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, (1983), Plaintiffs had adequately alleged their entitlement to seek damages either under federal or state antitrust law. (Mem. Op. and Order, ECF Doc. 320, at 10-11). On July 2, 2020, Plaintiffs filed their Second Amended Class Action Complaint (ECF Doc. 361) ("SAC"), more than sufficiently alleging their entitlement to pursue their allegations against each named defendant.

In a recent opinion in the case of *Marion Healthcare, LLC v. Becton Dickinson & Co.*, 952 F.3d 832 (7th Cir. 2020), the Seventh Circuit's opening observation concerning *Illinois Brick* and the conspiracy exception provides an apt introduction here. "Had [the manufacturer] acted alone, selling its products to an independent distributor, which then sold them to a healthcare provider, no one doubts that the *Illinois Brick* rule would bar the provider from suing [the manufacturer] for any alleged monopoly overcharges. **But these transactions were more complex.**" *Id.* at 836. Plaintiffs SAC lays out the complex transactions in this case with sufficient details to establish Plaintiffs' entitlement, as a matter of pleadings sufficiency, to pursue their antitrust violations. Moreover, contrary to the cursory attention paid by both Defendants, Plaintiffs' statutory consumer protection and state-based antitrust allegations are also sufficiently alleged.

## ARGUMENT

## I.      Plaintiffs Have More Than Plausibly Alleged Their Prudential Standing.

Plaintiffs as assignees of Medicare Advantage plans (hereinafter, "Assignors") have standing to bring claims against Defendant. The disproportionate volume and priority of

Defendants' arguments attacking Plaintiffs Article III standing is telling that indeed, as discussed in the Sections II and III to follow, Plaintiffs have more than sufficiently supported their ability to pursue the substance of their causes of action.

Plaintiffs' SAC contains allegations regarding Plaintiffs' standing to pursue claims on behalf of each and every one of their Assignors. SAC ¶ 51. To establish constitutional, prudential, and antitrust standing, Plaintiffs provided detailed allegations regarding twelve assignments in an Appendix and attached each of the assignments as exhibits. The assignments provided were for the following Assignors: (1) SummaCare, Inc. ("SMCR") (Ex. A1); (2) EmblemHealth Services Co., LLC and Group Health Inc., and Health Insurance Plan of Greater New York ("EHTH") (Ex. A2); (3) ConnectiCare, Inc. ("CONC") (Ex. A3); (4) University HealthCare MSO, Inc. ("UNHC") (Ex. A4); (5) Alianza Profesional de Cuidado Medico, Inc. ("APCM") (Ex. A5); (6) Preferred Medical Plan, Inc. ("PMPI") (Ex. A6); (7) Professional Health Choice, Inc. ("PHC") (Ex. A7); (8) Avmed, Inc. ("AVMED") (Ex. A8); (9) Health Care Advisors Services, Inc. ("HCAS") (Ex. A9); (10) Health First Health Plans, Inc. ("HFHP") (Ex. A10); (11) Hygea Health Holdings, Inc. ("HYG") (Ex. A11); and (12) Verimed IPA, LLC ("VMIL") (Ex. A12).[1]

Defendants assert several challenges to Plaintiffs' standing. First, Defendants assert that Plaintiffs have failed to allege sufficient facts regarding the payments for Acthar. Second, Defendants specifically challenge the validity of each of the twelve assignments to establish

---

[1] The PHC assignment was attached to the SAC to establish standing for Plaintiff MSPA Claims 1, LLC. The PMPI assignment was attached to the SAC to establish standing for MAO-MSO Recovery II, LLC, Series PMPI. The remaining assignments were attached to the SAC to establish standing for MSP Recovery Claims, Series LLC.

standing.[2] While Express Scripts clearly states it is challenging Plaintiffs' prudential standing, Mallinckrodt's motion is not so clear. ESI Mot. at 8-9; MKN Mot. at 20-23. However, the Court previously interpreted the Defendants' prior attacks on the validity of Plaintiffs' assignments to be a matter of prudential standing, so Plaintiffs will likewise interpret Mallinckrodt's current challenges concerning assignments as being an argument that Plaintiffs lack prudential standing. (*See* Mar. 23, 2020 Order, ECF Doc. 320, at 5-8.)

As discussed *infra*, each of Defendants' arguments are without merit and Plaintiffs have standing to pursue claims against Defendants.  For starters, the Court has already rejected Defendants' challenges to Plaintiffs' prudential (and constitutional) standing, holding that Plaintiffs had "allege[d] sufficient factual matter, accepted as true, to nudge [their] claim that they are assignees of the rights at issue across the line from conceivable to plausible." (*Id.* at 8, quoting *Allstate*, 2019 WL 4305519, at *2). The Court should likewise remain steadfast to its earlier finding.

### A. Plaintiffs Had Standing at the Time the Complaint Was Initially Filed and Plaintiffs Have Alleged an Injury in Fact.

Express Scripts first argues that Plaintiffs have not pleaded allegations to establish that they had standing at the time the initial complaint was filed. ESI Mot. at 7-8. Specifically, Express Scripts argues that because Plaintiffs have not included "dates of service, dates of payment, how much was paid, if anything, by whom and to whom, the name of the beneficiary prescribed Acthar, if and when the beneficiary received Acthar, etc." the Court cannot assess

---

[2] Express Scripts alleges that each of the twelve assignments Plaintiffs attached to the SAC fail to confer standing. Mallinckrodt alleges only eight of the assignments are invalid. Mallinckrodt does not bring any specific arguments about the assignments for HCAS, PMPI, UNHC, or APCM.

whether "any representative claims actually existed and were assigned" to Plaintiffs as of October 30, 2017. ESI Mot. at 7.

The cases upon which Express Scripts relies are clearly distinguishable. In *MSPA Claims 1, LLC v. State Farm Mut. Auto Ins. Co.*, No. 18-23165-CIV, 2019 WL 1055552 (S.D. Fla. Mar. 5, 2019) and *MSP Recovery Claims, Series LLC v. USAA Gen. Indem. Co.*, No. 18-21626-CIV, 2018 WL 5112998 (S.D. Fla. Oct. 19, 2018), the courts dismissed plaintiffs' claims where the only assignments alleged within the complaint to demonstrate prudential standing post-dated the filing of the complaint. Here, Plaintiffs attached seven assignments to the SAC which were executed prior to the complaint filing date of October 30, 2017.[3] As addressed in Section B.1. below, each of these assignments are valid and confer standing upon Plaintiffs.

Likewise, Mallinckrodt has argued that without specific information concerning the Assignors' payments, the court cannot evaluate whether the Assignors sustained an injury in fact. MKN Mot. at 20. Mallinckrodt states that Plaintiffs "have not plead any facts concerning the Assignors' purchases or payments for Acthar, including dates of payment, how much was paid, if anything, by whom and to whom, or when the beneficiary received the Acthar." *Id.* "At the pleading stage, general factual allegations of injury resulting from defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claims.'" *Lujan v. Defs. Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, at 889 (1990)).

Plaintiffs alleged throughout the SAC that the Assignors made purchases of Acthar which is sufficient to establish an injury in fact at the pleading stage. SAC ¶¶ 14, 52, 96, 97, 102,

---

[3] The assignments for SMCR, UNHC, APCM, PMPI, HCAS, HYG, and VMIL were all executed prior to October 30, 2017.

190-195, 206, 207, 214, 222. Defendants in *MSP Recovery Claims, Series LLC v. Sanofi-Aventis U.S., LLC*, 3:18-cv-2211-BRM-LHG, 2019 WL 1418129, at *10 (D.N.J. Mar. 29, 2019) made similar arguments regarding plaintiffs' alleged failure to allege an injury in fact. Specifically, the defendants argued that plaintiffs failed to identify a single payment for insulin by an assignor at an inflated price. The court rejected defendants' argument stating that the complaint pleaded the existence of a scheme to increase list prices, which resulted in profits for the defendants at the assignors' expense. *Id.* These allegations "[c]oupled with the allegations of purchases made by Plaintiffs' Assignors, Plaintiffs certainly allege a concrete and particularized injury sufficient to constitute an adequately plead injury in fact." *Id*. The same is true here. Plaintiffs' allegations of anticompetitive conduct coupled with allegations of purchases of Acthar made by the Assignors sufficiently establishes that the assignors were injured.

Numerous other courts across the country have held that Plaintiffs are not required to add detailed allegations at the motion to dismiss stage in order to establish standing. *See, e.g., MSP Recovery Claims, Series LLC v. Farmers Ins. Exch.* ("*Farmers*"), Nos. 17-02522, 17-02559, 2018 WL 5086623 (C.D. Cal. Ill. July 13, 2018); *Mercury General*, 2018 WL 3357493; *MAO-MSO Recovery II, LLC v. Infinity Prop. & Cas. Grp.*, No. 17-00513, 2018 WL 1244498 (N.D. Ala. Mar. 9, 2018); *MAO-MSO Recovery II, LLC v. Gov't Emps. Ins. Co. ("GEICO")*, Nos. 17-711, 17-964, 2018 WL 999920 (D. Md. Feb. 21, 2018). As Plaintiffs have alleged that they received assignments prior to October 30, 2017 and have adequately alleged an injury fact, Plaintiffs have established that they had standing at the time the original complaint was filed.

### B. Plaintiffs Have Adequately Pleaded Sufficient Facts to Demonstrate Prudential Standing.

Defendants next attack each of the assignments provided by Plaintiffs. Prudential limitations on federal jurisdiction include that generally, plaintiffs must assert their own legal rights and interests and cannot rest their claims on the rights of third parties. *G & S Holdings LLC v. Continental Cas. Co.*, 697 F.3d 534, 540 (7th Cir. 2012). "As a general rule, an assignment is a transfer of some identifiable property, claim or right from the assignor to the assignee. The assignment operates to transfer all of the right, title, or interest of the assignor in the thing assigned." *MSPA Claims 1, LLC v. Allstate Ins. Co.* (*"Allstate"*), No. 17-cv-01340, 2019 WL 4305519, at *2 (N.D. Ill. Sept. 11, 2019) (quoting *Owens v. McDermott, Will & Emery*, 736 N.E.2d 145, 155 (Ill. App. Ct. 2000)). "Generally, no particular form of assignment is required; any document which sufficiently evidences the intent of the assignor to vest ownership of the subject matter of the assignment in the assignee is sufficient to effect an assignment." *Id*. (quoting *Stoller v. Exch. Nat'l Bank of Chi.*, 557 N.E.2d 438, 443 (Ill. App. Ct. 1990)).

To establish prudential standing, Plaintiffs must "allege sufficient factual matter, accepted as true, to nudge its claim that they are assignees of the rights at issue 'across the line from conceivable to plausible.'" *Allstate*, 2019 WL 4305519, at *2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (1970)). "At the pleading stage, it is normally not difficult to pass the standing bar." *Laurens v. Volvo Cars of N. Am., LLC*, 868 F.3d 622, 624 (7th Cir. 2017). Federal Rule of Civil Procedure 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Assignment allegations are sufficient when the court can infer the who, what, and when of the assignments. *MAO-MSO*

*Recovery II, LLC v. Mercury General* (*"Mercury General"*), CV 17-02525-AB (AJWx), CV 17-02557-AB (AJWx), 2018 WL 3357493, at *6 (C.D. Cal. May 23, 2018).

"[A]rguments regarding lack of prudential standing are properly evaluated under the rubric of a motion for failure to state a claim under Rule 12(b)(6)." *MAO-MSO Recovery II, LLC v. Allstate Ins. Co.*, 2018 WL 165583, at *3 (N.D. Ill. Mar. 30, 2018)). A motion under Rule 12(b)(6) can only be based on the complaint, documents attached to the complaint, documents that are critical to the complaint and referred to therein, and information that is subject to judicial notice. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). However, plaintiffs have more flexibility in responding to a 12(b)(6) motion. *Id.* A plaintiff opposing a Rule 12(b)(6) motion may also "submit materials outside the pleadings to illustrate the facts the party expects to be able to prove." *Id*; *see also Klinger v. City of Chicago*, No. 15-cv-1609, 2017 WL 736895, at *1 (N.D. Ill. Feb. 24, 2017) ("The Court's ruling on Defendant's motion to dismiss is based only on Plaintiff's allegations and matters outside the complaint referenced by Plaintiff that are not contrary to any of the allegations in the complaint."); *Sorrentino v. Godinez*, No. 12 C 6757, 2013 WL 5497244, at *1 (N.D. Ill. Oct. 3, 2013) ("The Court may also consider elaborations made by plaintiffs in opposing the motion to dismiss, so long as those elaborations are consistent with the facts in the complaint.").

Plaintiffs have "plead with the clarity necessary to establish that [they were] actually the assignee" of the alleged claims" and thus have established that they have standing under each of the assignments. *Allstate*, 2019 WL 4305519, at *2 (quoting *Llano Fin. Grp., LLC v. Lendzion*, No. 15 C 7901, 2016 WL 930660, at *4 (N.D. Ill. Mar. 11, 2016)).

1. **MSP Recovery Claims, Series LLC ("MSPRC") May Bring Claims on Behalf of Series Entities.**

Express Scripts argues that Plaintiffs lack prudential standing under the EHTH, CONC, HFHP, SMCR, AVMED, HCAS, HYG, VMIL, UNHC, and APCM assignments because MSPRC cannot sue on behalf of a Series entity. ESI Mot. at 10-12, 14-17, 19. Express Scripts argues that courts have held that a 'series' entity is similar to a corporation with subsidiaries and parent corporations lack standing to sue on behalf of their subsidiaries. ESI Mot. at 10. While Express Scripts admits that Delaware law permits an LLC to sue on behalf of its series if provided in the operating agreement, it argues that since Plaintiffs did not attach the operating agreement to the SAC or allege that the agreement provides MSPRC the right to sue, the SAC is deficient. ESI Mot. at 10-11.

The Eleventh Circuit recently rejected this argument. *See MSP Recovery Claims Series LLC v. ACE American Ins. Co.* (*"ACE"*), No. 18-12139, No. 18-12149, No. 18-13049, No. 18-13312, 2020 WL 5365978, at *10 (11th Cir. Sept. 4, 2020). The court noted that Delaware law "uses permissive language that provides that a 'series *may* have' – but are not required to have – 'separate rights, powers or duties with respect to specified property or obligations of [its affiliated] limited liability company.'" *Id.* (quoting 6 Del. C. § 18-215) (emphasis in original). The court stated that depending on how MSPRC's relationships with the series entities are structured, MSPRC could have the same rights as the series with respect to the assignments. *Id.* The court found that nothing in the record "suggests that MSPRC's relationship with its series LLCs preclude MSPRC from asserting those series LLCs' rights." *Id.*

Plaintiffs' SAC specifically states that "[b]ecause of the assignment or assignments, ***and in accordance with MSPRC's operating agreement***, Plaintiff MSPRC is empowered to recover

9

the cost of Acthar payments made on behalf of the assignors' beneficiaries …" SAC ¶ 19 (emphasis added). There is nothing in the record to indicate that MSPRC cannot bring claims on behalf of the series LLC's and thus "[a]t the pleading stage, [the Court should] accept as true MSPRC's allegation that it has the right to bring claims under the proffered contracts." *ACE*, 2020 WL 5365978, at *10. Notably, Mallinckrodt does not raise this argument, likely because the Court already rejected it after reviewing MSPRC's operating agreement (ECF No. 197-1). Mar. 23, 2020 Ord. at 5-6.

### 2. The Subsequent Internal MSP Assignments are Valid.

Defendants both challenge the validity of the subsequent internal assignments from MSP Recovery, LLC to another MSP entity. Defendants argue that the EHTH, SMCR, and PHC assignments all require written approval from the Assignors approving any subsequent assignments.[4] ESI Mot. at 12, 15, 17; MKN Mot at 23.

Defendants also allege that that the HYG and VMIL assignments only allow subsequent assignments to an affiliate, successor, or related entity of MSP Recovery, LLC and Plaintiffs have failed to allege that the Series entity (or MSPRC) are successors, affiliates, subsidiaries, or related entities of MSP Recovery, LLC. ESI Mot. at 16-17; MKN Mot. at 23. Express Scripts makes similar arguments regarding the assignments for UNHC, APCM, and PMPI.[5] ESI Mot. at 19.

---

[4] The relevant provisions of the assignments are as follows: EHTH (Ex. A2 § 6(d)); SMCR (Ex. A1 § 7.10); PHC (Ex. A7 § 2.2).

[5] The relevant provisions of the assignments are as follows: HYG (Ex. A11 § 1.4(vii)); VMIL (Ex. A12 § 1.1); UNHC (Ex. A4 § 6.14); APCM (Ex. A5 § 6.14); and PMPI (Ex. A6 § 1.1).

Other courts have rejected this argument. In *Mercury General*, defendants argued that the SummaCare assignment required consent for any subsequent assignments. 2018 WL 3357493, at *5-6. The court reviewed the SummaCare assignment and found defendant's argument "unavailing" because "the language of the assignment purports to allow internal assignments without approval." *Id*. at *6. The court in *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.* ("*State Farm (Ill.)*"), 2018 WL 3420796, at *5 n.4 (C.D. Ill. July 13, 2018), also rejected an argument that an assignment required written approval before it could be subsequently assigned. The court noted that it was "perplexed" by the idea that an assignor could:

> assign all of its rights in a cause of action, but still require approval of any subsequent assignee. This seems wholly inconsistent with an assignment, given an assignment transfers all rights to the thing assigned. ***Even had the subsequent assignment not been approved, the Court would not be included to invalidate it.***

*Id.* (emphasis added). The court analogized the issue to that of anti-assignment provisions in insurance policies. *Id.* In Florida, a provision in an insurance policy which prohibits assignment without the consent of the insurer does not prevent the assignment of a claim or interest in insurance money due after the loss. *Id.* "Even when an insurance policy contains a provision barring assignment of the policy, an insured may assign a post-loss claim." *Id.* (quoting *One Call Prop. Servs. Inc. v. Sec. First Ins. Co.*, 165 So. 3d, 749, 753 (Fla. Dist. Ct. App. 2015)). The court acknowledged that while the case did not deal with insurance policies, it was clear that Florida courts "disfavored anti-assignment provisions which attempt to interfere with an assignment of a cause of action." *Id*. The same is true under Ohio and New York law.[6] *See*

---

[6] The EHTH assignment is governed by New York law. (Ex. A2, § 11). The SMCR assignment is governed by Ohio law. (Ex. A1, § 7.3). The PHC, HYG, VMIL, UNHC, APCM, and PMPI assignments are governed by Florida law. (Ex. A7 § 6.3); (Ex. A11, § 6.3); (Ex. A12, § 6.3); (Ex. A4, § 6.3); (Ex. A5, § 6.3); and (Ex. A6, § 7.3).

*Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 861 N.E. 2d 121, 128-29 (Ohio 2006);

*M.V.B. Collision Inc. v. State Farm Ins. Co.*, 72 N.Y.S. 3d 407, 412 (N.Y. Dist. Ct. 2018).

Like the courts did in *Mercury General* and *State Farm (Ill.)*, the court should reject Defendants' arguments regarding the validity of the subsequent internal assignments. In addition to the reasons described above, written approval is not required with regards to the PHC assignment as the assignment allows for assignments that are ministerial in nature. *See* (Ex. A7 § 2.2). Moreover, with regards to the EHTH assignment is it absurd to allege that EHTH had to provide written approval since the subsequent assignment was from one assignee (MSP Recovery, LLC) to its very own co-assignee (Series 16-08-483), of which EHTH was aware. Although Plaintiffs assert that written approval was not required for any of the assignments, Plaintiffs have received written approval from EHTH and SMCR. (*See* Exhibits A and B to the Higgins declaration submitted herewith.)

Furthermore, it is clear that MSPRC is a successor, affiliate, or related entity to MSP Recovery, LLC. The court should follow the lead of the court in *Mercury General* and hold that "the language of the assignment[s] purport[] to allow internal assignments without approval", and thus the subsequent internal assignments for HYG, VMIL, UNHC, APCM, and PMPI assignments are valid. *Mercury General*, 2018 WL 3357493, at \*6.

### 3.    The Acthar Claims are within the Scope of the Assignments.

Defendants also allege that the EHTH, CONC, SMCR, and AVMED assignments contain date restrictions and or other restrictions on the scope of the assignments and because Plaintiffs do not allege that the Acthar claims fall within the scope of the assignment, the complaint is deficient.  ESI Mot. at 11-15; MKN Mot. at 23. Plaintiffs' SAC alleges that "[b]ecause of the

assignment or assignments" each plaintiff is "empowered to recover the cost of Acthar payments made on behalf of the assignors' beneficiaries for which Defendants are liable due to the anti-competitive conduct alleged herein." SAC ¶¶ 19, 25, 26. Plaintiffs further alleged that the assignments are "valid and binding contracts" and that "Plaintiffs' Assignors provided Medicare benefits to their enrollees, including payments for the enrollees' Acthar prescriptions." *Id.* ¶¶ 51-52. These allegations are sufficient at the pleading stage to establish that the Acthar claims are within the scope of these assignments.

Multiple courts have found that plaintiffs have adequately alleged standing based on similar allegations. In *Farmers*, the court reviewed the EHTH, SMCR, VMIL, and HCAS assignments and found that the language of the assignments was consistent with the complaint's allegations that "all legal rights of recovery and reimbursement for health care services and Medicare benefits provided by the health care organizations that administer Medicare benefits for beneficiaries under Medicare." 2018 WL 5086623, at *12 (internal citation omitted). The court found that these allegations were sufficient to demonstrate valid assignments.

In *MSP Recovery Claims, Series LLC v. Phoenix Ins. Co.*, 426 F. Supp. 3d 458, 475 (N.D. Ohio 2019), the defendants argued that the SMCR assignment was too vague to establish standing to bring the "precise claim at issue." The court disagreed finding that the assignment demonstrated a clear intent to effectuate an assignment of claims, including the claims in the complaint. *Id.* at 476. The court noted that "Plaintiffs expressly allege in the Complaint that they 'have the legal right to pursue this MSP Act claim … on behalf of SummaCare pursuant to a series of valid assignment agreements.'" *Id.* at 477 (internal citation omitted). Defendants also argued that the assignment was insufficient because of the exclusionary language which made it

impossible to identify additional claims that may be encompassed by the assignment. *Id.* The court again disagreed, finding that the exclusionary language "does not render the assignment so vague as to render it an invalid contract … The parties will be able to more specifically define, through discovery, the exact universe of claims that Plaintiffs believe may fall within the purview of the assignment. If Plaintiffs are unable to do so, Defendant may, of course, revisit this issue at later stages in the proceedings." *Id.* The court in *MSP Recovery Claims, Series LLC v. Grange Ins. Co.*, No. 5:19cv00219, 2019 WL 6770729, at *11 (N.D. Ohio Dec. 12, 2019), also reviewed the SMCR assignment and found that because plaintiffs had set forth relevant provisions of the assignment in the complaint, alleged the claims were within the scope of the assignment, and attached copies of the assignment to the complaint, that was sufficient at the pleading stage to establish standing.

Likewise, the court in *GEICO* found that plaintiffs' allegations that they "assert the rights of MAOs via assignment of all rights, title, and interest allowing them to bring these claims" was sufficient to establish standing. 2018 WL 999920, at *7. The court noted that the "validity and ***scope of the assignments*** may be challenged on summary judgment." *Id*. (emphasis added).

Plaintiffs' allegations are sufficient to establish that the Acthar claims fall within the scope of the EHTH, CONC, SMCR, and AVMED assignments. Plaintiffs also affirmatively assert that they bring Acthar claims for EHTH, CONC, SMCR, and AVMED that fall within the specific date restrictions and/or other restrictions on the scope of the assignments. Specifically, Plaintiffs bring claims for EHTH and CONC related to payments of Acthar that occurred between September 29, 2011 and September 29, 2017. (Ex. A2 at 10); (Ex. A3 at fourth "Whereas" clause). Said Acthar claims are not excluded from the assignment as claims "that

14

Assignor may have against its members, enrollees, and/or contracted providers … or claims that are currently being pursued by other vendors." (Ex. A2 at § 2(a)); (Ex. A3 at fourth "Whereas" clause). Plaintiffs bring claims for SMCR related to payments of Acthar that occurred between January 1, 2009 and May 12, 2017. (Ex. A1 at 19). Said claims were not "previously identified by other vendors currently under contract with [SMCR]." (Ex A1 § 4.1). Plaintiffs bring claims for AVMED related to payments of Acthar that are "under CMS Contract ID Number H1016" and the claims are not excluded as they are not against AVMED's "network healthcare providers and current and former members." (Ex. A8 at 1-2). The Court may consider facts that are not included in the complaint referenced by Plaintiffs' brief as long as they are not contrary to any allegations in the complaint. *Rose v. Haney*, 16-cv-5088, 2017 WL 1833188, at *1 (N.D. Ill. May 8, 2017). Plaintiffs' additional allegations regarding these assignments are not contrary to the complaint as Plaintiffs alleged that they were empowered to recover payments for Acthar due to these assignments.

### 4. The Assignments that Were Executed After the Initial Complaint was Filed are Valid.

Plaintiffs acknowledge that both the initial and subsequent EHTH, CONC, HFHP, and AVMED assignments and the subsequent internal assignment for PHC were all executed after the date the initial complaint was filed. However, whether these assignments can confer standing is not as clear as Defendants allege. In *Duncan Place Owners Ass'n v. Danze, Inc.*, No. 15 C 01662, 2015 WL 5445024, *5 (N.D. Ill. Sept. 15, 2015), the court held that a plaintiff who receives an assignment after commencing litigation can cure a standing deficiency by filing an amended complaint. *Id.* In *Duncan*, a homeowner's association filed suit on behalf of its residents and during the litigation, the association had their residents execute assignments of

their claims to the association. *Id.* The association tried to introduce these assignments and defendants opposed. *Id.* The court held that if plaintiff amended its complaint and added information regarding the assignors, they would cure any defects in standing. *Id.*

Here, the EHTH, CONC, HFHP, AVMED, and PHC assignments were executed prior to July 2, 2020 *before* the SAC was filed, rendering them sufficient to confer standing. Alternatively, the rules of procedure permit plaintiffs to supplement their complaint pursuant to Rule 15(d) when facts occurring after the filing of the original complaint could cure standing deficiencies that existed at the time of the original complaint. *Northstar Fin. Advisors, Inc. v. Schawb Inv.*, 779 F.3d 1036, 1044 (9th Cir. 2015); *Farmers*, 2018 WL 5086623, at *14. Moreover, the "absence of prudential standing can be cured after a lawsuit is filed." *VYSE Gelatin Co. v. Hicks,* No. 17-cv-2937, 2018 WL 3970266 at * 4 (N.D. Ill. Aug. 20, 2018).

Furthermore, Defendants raised a similar argument as to the EHTH and CONC assignments in their previous motion to dismiss and the Court noted that it was "not persuaded that Plaintiffs' constitutional (or prudential) standing depends on the EmblemHealth or ConnectiCare assignments." Mar. 23, 2020 Ord. at 2 n.1. As discussed above, Plaintiffs have provided multiple other assignments that were all executed prior to October 30, 2017, which can be used to establish standing. The Court only needs to find that one plaintiff has standing in order for the case to proceed. *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007); *State Farm (Ill.)*, 2018 WL 3420796, at *6 n.5.

**5.      The HYG, HCAS, and PHC Assignments are Valid.**

In addition to the challenges to the HCAS, HYG, and PHC assignments discussed above, Defendants raise additional arguments regarding the scope of these assignments.

**HCAS.** *First*, Express Scripts alleges that because Plaintiffs did not attach the "Actos Recovery Agreement, dated August 28, 2015" or make any allegations regarding that assignment, the Court cannot determine whether any representative Acthar claims actually fall within the scope of the assignment. ESI Mot. at 16. Express Scripts' argument is disingenuous. The assignment from HCAS to MSP Recovery, LLC assigned "any and all of Client's right, title, ownership and interest in and to all rights and entitlements … this includes, but is not limited to, … third parties that may be liable to Client arising from or relating to the assigned claims." (Ex. A9 § 4.1). The subsequent assignment from MSP Recovery, LLC to Series 15-08-27 assigned these claims to Series 15-08-27. Plaintiffs did not attach the "Actos Recovery Agreement" to the SAC because the assignment is irrelevant to the Acthar claims.

As the name "***Actos*** Recovery Agreement" suggests, the claims assigned were related only to the drug Actos. While Plaintiffs do not believe this assignment is relevant and that the Court can easily determine that the Acthar claims were assigned to 15-08-27 pursuant to the Recovery Agreement attached to the SAC, Plaintiffs nonetheless attach the "Actos Recovery Agreement" to dispel the purported mystery. (*See* Exhibit C to the Higgins declaration submitted herewith.) *Second*, Express Scripts argues that because MSP Recovery 15-118 is included on the subsequent assignment from MSP Recovery, LLC to Series 15-08-27 but because Plaintiffs provided no exhibits or allegations regarding MSP Recovery 15-118, the Court cannot determine which rights were assigned. ESI Mot. at 16. Plaintiffs aver that MSP Recovery 15-118 was inadvertently listed in the subsequent assignment from MSP Recovery, LLC to Series 15-08-27 and the inclusion of MSP Recovery 15-118 was a scrivener's error. MSP Recovery 15-118 never

possessed any rights in connection with the HCAS claims that were assigned. Thus, this error does not affect the validity or enforceability of the subsequent assignment.

**HYG.** Express Scripts argues that the subsequent assignment to Series 15-18-19 purports to assign claims by both MSP Recovery, LLC and MSP Recovery 15-135, LLC but that the SAC and exhibits do not explain what claims MSP Recovery 15-135 held, how it obtained those claims and whether the claims were excluded from the assignment. Thus, the Court is unable to determine what claims were assigned to MSP Recovery 15-135. ESI Mot. at 17. Plaintiffs aver that MSP Recovery 15-135 was inadvertently listed in the subsequent assignment from MSP Recovery, LLC to Series 15-18-19 and the inclusion of MSP Recovery 15-135 was a scrivener's error. MSP Recovery 15-135 never possessed any rights in connection with the HYG claims that were assigned. Thus, this error does not affect the validity or enforceability of the subsequent assignment.

**PHC**. Mallinckrodt alleges that the assignment from PHC to MSPA XI, LLC does not identify the claims that PHC assigned. MKN Mot. at 21. Mallinckrodt's argument rests on the fact that a Whereas clause states that PHC "assign[s] and transfer[s] … the rights and causes of action set forth" in Exhibit A and because Plaintiffs have failed to attach Exhibit A they have failed to adequately plead facts showing the existence of a valid assignment. MKN at 21. Plaintiffs have not failed to attach Exhibit A, as an Exhibit A was never executed. However, that does not mean the assignment is not valid. Under Florida law (which controls the interpretation of the PHC assignment, see *supra* footnote 6, "the intent of the parties determines the existence of an assignment." *State Farm*, (quoting *Citizens Prop. Ins. Corp. v. Ifergane*, 114 So. 3d 190, 195 (Fla. Dist. Ct. App. 2012)). Section 1.1 titled "Irrevocable and Absolute Assignment of

Claims" provides that "Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSPA Claims, or its assigns, ***any and all*** of Client's right, title, ownership, and interest in and to ***all rights and entitlements*** that Client has, may have had, or has asserted against any party including primary payors and/or third parties that may be liable to Client[.]" (Ex. A7 § 1.1) (emphasis added). Thus, it is clear that the intent of the parties was to assign any and all rights and entitlements which would include Acthar claims.

Express Scripts argues that the subsequent assignment from MSPA XI, LLC to MSPA Claims 1, LLC does not assign all claims. ESI Mot. at 18. Because Plaintiffs' SAC doesn't allege a list of claims that were or were not previously assigned, Express Scripts argues the SAC is deficient. *Id.* Express Scripts is correct, the subsequent assignment did not assign all claims MSPA Claims XI, LLC had previously acquired to MSPA Claims 1, LLC. As mentioned in the assignment, MSPA Claims XI, LLC had previously assigned all rights to the "Limited Assigned Claims" to MSPA Claims 1, LLC on January 21, 2016. (Ex. A7 at 15). However, none of the previously assigned claims were those acquired from PHC. A review of the description of the "Limited Assigned Claims" makes that clear. The "Limited Assigned Claims" are those that relate to "certain Class Action Cases" and "Lien Recoveries, specifically the liens asserted in the multi-district litigation case styled, In re: Actos." *Id.* Obviously, the Acthar claims were not assigned as part of the lien recovery claims for the case *In re: Actos*. The other claims relating to "Class Action Cases" also clearly does not involve the Acthar claim as the "Limited Assigned Claims" were assigned on January 21, 2016 over a year and nine months before Plaintiffs filed the initial Acthar class action complaint on October 30, 2017. Moreover, Plaintiffs aver that the "Class Action Cases" did not involve any Acthar claims (or any other pharmaceutical claims

other than lien recovery for Actos) but rather were for specific individual claims in class action cases against property and casualty insurers. Thus, it is clear that the Acthar claims were not included in the "Limited Assigned Claims" assigned on January 21, 2016 but rather those claims were assigned from MSPA Claims XI, LLC to MSPA Claims 1, LLC in the attached assignment.

### 6. The Assignments for Indirect Purchaser Claims are Valid.

Finally, Express Scripts alleges that Plaintiffs do not have standing to pursue federal antitrust claims on behalf of UNHC, APCM, and PMPI because they are indirect purchasers of Acthar who did not purchase Acthar from an Express Scripts entity or Mallinckrodt. ESI Mot. at 18-19. While *Illinois Brick* and *AGC* have an effect on Plaintiffs' antitrust standing, Express Scripts has provided citations to no case law stating that Plaintiffs cannot establish prudential standing under *Illinois Brick* or *AGC.* Express Scripts only cites to the Court's prior decision dismissing Plaintiffs claims. Mar. 23, 2020 Ord. at 9-12. But again, the Court discussed the indirect purchaser limitations with regards to *antitrust standing* not prudential standing.

### 7. Plaintiffs Can Still Bring Claims on Behalf of Network Health Plan, Inc. ("NHPN").

Finally, Defendants argue that because Plaintiffs have not alleged any facts or attached any assignments for NHPN, the Court should hold that Plaintiffs lack standing to pursue claims on behalf of NHPN. ESI Mot. at 18 n.6; MKN Mot. at 23. Plaintiffs attached twelve assignments to SAC establish standing but are seeking recovery on behalf of each and every assignor that made payments for Acthar. SAC ¶¶ 51. Plaintiffs are not required to allege the specific details of each of its assignors and attach each assignment agreement to the SAC at the pleading stage. *See, e.g. MSP Recovery Claims, Series LLC v. Sanofi-Aventis, LLC*, 3:18-cv-2211(BRM)(LHG), 2020 WL 831578, at *6-7 (D.N.J. Feb. 20, 2020) (denying motion to limit plaintiffs' claims to the

exemplar assignors). Defendants may challenge Plaintiffs right to recover on behalf of any specific assignor later in the litigation such as in a motion for summary judgment.

## II.     Plaintiffs Have More Than Plausibly Alleged Their Antitrust Standing.

### A.     Plaintiffs Allegations Surrounding Mallinckrodt's and the ExpressScripts Entities' Distribution Model Fully Support Plaintiffs' Antitrust Theories.

As it relates to Plaintiffs allegations concerning the Defendants' distribution model for Acthar, Defendants have essentially one argument that Plaintiffs' allegations are insufficient to state a claim for antitrust injury related: that each MA Plan's purchase of the drug is fulfilled through a specialty pharmacy and not directly with Mallinckrodt. But Defendants' desire to describe its distribution channel as one with distinct players is false. Mallinkrodt, CuraScript, and UBC deliberately changed the Acthar distribution model to one in which Mallinckrodt (as manufacturer) and its designated "hub" (UBC for the majority of the time period at issue here) made the specialty pharmacies (not just Accredo) economically irrelevant fixtures. As depicted on page 27 of the SAC (from its Exhibit 2), there were only approximately six specialty pharmacies authorized to *dispense* Acthar, including Accredo and CuraScript SP, the ExpressScripts owned specialty pharmacies. And yes, Plaintiffs do allege that the specialty pharmacies (other than the ExpressScripts ones) "are unaffiliated with the Acthar price-fixing conspiracy," but they are also not intermediate purchasers in the sense of *Illinois Brick*.

This is because they are the limited, captive, delivery vehicles, chosen by Mallinckrodt and selected by its co-conspirator UBC. Payers such as Plaintiffs assignors are not purchasing the drug from the specialty pharmacies any more than consumers purchase Amazon goods from UPS. While the speciality pharmacies are not price-fixing (that role is held by Mallinckrodt), it is Mallinckrodt and UBC (through the "ASAP" hub that Payers are forced to use) that choose

which interchangeable specialty pharmacy will actually deliver the drug to the individual patient.

And pursuant to the exclusive distribution model Mallinckrodt introduced in 2007, there was only *one* distributor, Curascript SD (an ExpressScripts entity). Not a limited network of distributors, but only the one.

Remarkably, both sets of Defendants cite favorably to the Seventh Circuit's recent opinion, *Marion Healthcare, LLC v. Becton Dickinson & Co.*, 952 F.3d 832 (7th Cir. 2020). ExpressScripts quotes from the analysis in *Marion* about the *multiple* distributors at play in that case and then in the following paragraph deliberately conflates the distributor roles from *Marion* with the handful of specialty pharmacies in this case. (ESI Mem., ECF Doc. 409, at 23-24.) But as just discussed, the specialty pharmacies here do not serve any role akin to that of a distributor.

For its part, Mallinckrodt states that in *Marion* the Seventh Circuit "upheld the dismissal of a complaint" based on similar facts to this case. (Mallinckrodt Mem., ECF Doc. 412/415, at 11.) Neither assertion (the result of the appeal or the similarity of the facts) is accurate.

To start, the opinion in *Marion* states what we already know, but bears repeating: that although *Illinois Brick* forecloses antitrust recovery from indirect purchasers, an exception is found "when a monopolist enters into a conspiracy with its distributors," whereby the first party to purchase from the conspirator is a proper antitrust plaintiff. *Id.* at 836. As such, when remanding the case back to the district court to permit the plaintiffs' amendment, the court found that the healthcare company plaintiffs, as the first purchasers outside the alleged conspiracy, were indeed proper antitrust plaintiffs. *Id.* at 841.

The district court had held that the conspiracy exception could only be applied for price fixing allegations, since the antitrust damages to be attributed to the *Marion* plaintiffs was too

difficult to ascertain. But the Seventh Circuit held to the contrary, with reasoning that is instructive here:

> The central point of *Illinois Brick* is to allocate the right to recover to one and only one entity in the market. It is just as easy to do that in the present case, where that entity is the Provider group and the mechanisms that the conspiracy uses to push up prices include exclusive dealing arrangements and bribes or kickbacks, as it is if the entity is the same Provider group but the anticompetitive activity is a more direct agreement to raise prices. Whatever difficulties there may be in calculating damages in a case such as this one, they are not enhanced by the complex downstream tracing that the Court rejected in both *Illinois Brick* and *UtiliCorp*.

*Id.* at 840.

The Seventh Circuit found that the provider plaintiffs had *not* established the antitrust conspiracy between the manufacturer and the *multiple* distributors, but remanded the case because the district court's complete rejection of their theory did not give them an adequate opportunity to do so. *Id.* at 843.

> As the complaint now stands, the Providers have not shown that the *distributors [plural]* made a conscious commitment to participate in an illegal scheme. Without any allegation that the *distributors* coordinated with Becton [the manufacturer] to profit from the anticompetitive scheme, their case is barred under *Illinois Brick*.
> …
> Now that we have straightened out the *Illinois Brick* side of things, we conclude that the Providers should have an opportunity to file an amended complaint, provided that they believe they can adequately plead that the *distributors* were part of the putative conspiracy.

*Id.* (emphasis and bracketed cues supplied). Since there is only one distributor in this case (Curascript SD), and Plaintiffs have more than plausibly alleged CuraScript's conspiracy with Mallinckrodt, both in terms of price-fixing and non-competitive pharmacy participation, the hurdles faced by the *Marion* plaintiffs do not exist here. Plaintiffs have more than sufficiently addressed what this Court said Plaintiffs needed to better articulate: the roles of each player in

the distribution of Acthar to Plaintiffs' assignors. As such, Defendants' motion should be denied.

**B.**  **Plaintiffs Allegations Surrounding Mallinckrodt's Purchase and Shelving of Synacthen Fully Support Plaintiffs' Antitrust Theories.**

In the category of Plaintiffs' factual allegations of Mallinckrodt's anticompetitive behavior and Plaintiffs' assignors antitrust injuries, Mallinckrodt's motion is a poor attempt at factual sleight of hand. Although argued like a summary judgment motion freed from the rigor of Fed. R. Civ. P. 56, this is a pleadings motion. Plaintiffs have plausibly alleged that two main sets of facts related to Mallinckrodt's anticompetitive behavior that Mallinckrodt is attempting to deconstruct. The first is the 2007 change to an "orphan" or "ultra orphan" exclusive distribution model, which Defendants admit in their internal documents was to remove competition between pharmacies. (Mallinckrodt Mem., ECF Doc. 412/415, at 10, quoting SAC ¶101.) But with regard to Synacthen, Plaintiffs plausibly allege that Synacthen was a competitive threat to the monopoly power that Mallinckrodt admits it holds (*id.* at 16) and that Mallinckrodt purchased and shelved its only real competitive threat. This is a sufficient allegation of anticompetitive behavior. All that Mallinckrodt can say in response is a series of misdirects. Mallinckrodt declares that Acthar was approved for 19 different indications (*id.* at 17), but in all but one of them, the value of Acthar had either been completely eclipsed by better and cheaper alternatives. The only indication for which Acthar held an apparently legitimate therapeutic role was Infantile Spasms. Part of Questcor's revival narrative is that IS treaters rallied to make sure Acthar continued to be produced. And Plaintiffs have alleged that Synacthen was the drug that threatened to knock Acthar off its final perch of commercial viability.

And while this is a pleadings motion, Defendants are quick to note that discovery is underway. That discovery has confirmed that Questcor closely studied Synacthen and believed it

24

(and its owner Novartis) to be Acthar's only competitive threat. Mallinckrodt's response is a combination of rejection of the facts actually and plausibly alleged and empty arguments that fail to show any defect supportive of dismissal. FDA approval would not be guaranteed, Mallinckrodt urges, and clinical trials would have to have been performed. (*Id.* at 17-18.) Plaintiffs "make no *specific allegations* regarding Synacthen's potential use and effectiveness as to any particular Acthar indication," Mallinckrodt claims." (*Id.* at 18, emphasis supplied.) And yet discovery has uncovered, just this week, that while wooing Novartis to divest itself of Synacthen, Questcor made clear and repeated assurances to Novartis of Questcor's commitment to see Synacthen through to FDA approval. While Plaintiffs need only defend their allegations, the Court must not permit either Defendant to flippantly argue extraneous "facts" that it knows are contrary to the record unfolding in discovery.

### III. Plaintiffs Have More Than Plausibly Alleged Claims for Relief Under State Antitrust and Consumer Protection Statutes.

#### A. Plaintiffs Do Not Lack Standing as Indirect Purchasers to Assert Claims Under the Antitrust Laws of Certain States.

**Illinois**. Defendants argue that Plaintiffs cannot bring their claims under the Illinois Antitrust Act ("IAA"), 740 Ill. Comp. Laws 10/7(2), as it provides that "no person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act, with the sole exception of this State's Attorney General[.]" MKN MTD at 24. This provision does nothing more than dictate the manner in which the procedural device of a class action can proceed and does not apply in federal court pursuant to the Supreme Court's ruling in *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). This provision of the IAA does not alter the scope of any substantive right or remedy and therefore is

not substantive for purposes of *Shady Grove* as "any indirect purchaser procedurally blocked from participation in a class action would still have the same remedy in an individual action." *In re Aggrenox Antitrust Litig*., No. 14-MD-2516, 2016 WL 4204478, at *6 (D. Conn. Aug. 9, 2016). Agreeing with the reasoning in *Aggrenox,* Judge Kapala denied Defendants' motion to dismiss City of Rockford's claims based on the IAA. *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 764-65 (N.D. Ill. 2019).

**Puerto Rico**. The Puerto Rico Antitrust Act ("PRAA") does not expressly prohibit suit by indirect purchasers. 10 L.P.R.A. §§ 257, *et seq*. While Plaintiffs acknowledge that several district courts have dismissed indirect purchasers claims for lack of standing, Plaintiffs believe the United States District Court for the District of Puerto Rico has correctly interpreted the standing requirements of the PRAA, in light of how the Supreme Court of Puerto Rico reads that statute. *Rivera-Muniz v. Horizon Lines Inc.*, 737 F. Supp. 2d 57, 61 (D.P.R. 2010) citing *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 D.P.R. 497, 520 (P.R. 1994). The Supreme Court of Puerto Rico in *Pressure Vessel* held that plaintiffs only need to meet the following conditions to bring an antitrust suit: (1) the person was harmed in his business or property; (2) by reason of (3) actions prohibited by law. 137 D.P.R. at 518. Based on this interpretation, the court in *Rivera-Muniz* held, "[b]ecause Puerto Rico liberally construes its standing requirements in private antitrust cases, it is immaterial whether Plaintiffs are direct or indirect purchasers." *Rivera-Muniz*, 737 F. Supp. 2d at 61 (internal citation omitted); *see also Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*, 15 Civ. 6549 (CM), 2018 WL 7197233, at *23 (S.D.N.Y. Dec. 18, 2018) (denying motion to dismiss Puerto Rico antitrust claim).

**Rhode Island.** Plaintiffs agree that any claim they seek to recover under the Rhode Island Antitrust Act is limited to damages arising after July 15, 2013, the effective date of the statute's *Illinois Brick* repealer. *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 839 (E.D. Pa. 2019). This is not a basis for dismissal of Plaintiffs claims.

**B.      Plaintiffs Do Not Lack Standing Under Consumer-Protection Theories**

Defendants next argue that Plaintiffs cannot circumvent *Illinois Brick* by "recasting antitrust claims as consumer-protection claims" and thus Plaintiffs' claims under Alaska, Delaware, Georgia, and Illinois must fail. MKN MTD at 26. "[J]ust because the same course of conduct gives rise to recovery under two distinct statutory provisions does not mean that a bar to recovery under one necessarily applies with equal force to the other." *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1080 (S.D. Cal. 2017). Consumer protection claims "repackaged" as antitrust claims is not a sufficient enough argument to dismiss consumer protection claims. *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 840 (E.D. Pa. 2019). "Because 'states are free to permit recovery by indirect purchasers' [indirect purchaser plaintiffs] are not barred from pursuing such recovery under the various state consumer protection laws so long as their allegations are enough to plead the relevant consumer protection violation." *Id.* (denying motion to dismiss as to the Alaska Unfair Trade Practices and Consumer Protection Act); *see also*, *Sergeants Benevolent*, 2018 WL 7197233, at \*42 (finding that anticompetitive conduct is not barred by the Illinois Consumer Fraud Act). Plaintiffs' consumer-protection claims under the laws of Alaska, Delaware, Georgia, and Illinois survive.

27

C.      **The Complaint Does Not Fail to Adequately Plead Consumer Protection Claims.**

Defendants allege that Plaintiffs' consumer-protection claims are not adequately plead because there is no information on how the claims satisfy the particular requirements of each state's consumer protection statute. MKN MTD at 26. Plaintiffs' have adequately plead the consumer protection claims because Plaintiffs' complaint "contained detailed factual allegations that make their claims plausible that Defendants engaged in unfair competition" and therefore, they "need not reiterate the facts in their consumer protection law counts." *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, 368 F. Supp. 3d at 840; *see also Sergeant's Benevolent*, 2018 WL 7197233, at *35 ("the factual allegations that support the [indirect purchaser plaintiff's] claims are well-pleaded throughout the Complaint, and it is not necessary that the [indirect purchaser plaintiff] reiterate each of them when listing its causes of action in the final section of the Complaint"); *see also In re Domestic Drywall Antitrust Litig.*, No. 13-2437, 2016 WL 3769680, at *11 (E.D. Pa. July 13, 2016) ("To the extent Defendants' one-paragraph [Twombly] argument is an invitation for the Court to comb through all of Plaintiffs' consumer protection claims and determine whether the elements have been adequately pleaded, the Court respectfully declines the invitation."). Thus, Plaintiffs have adequately pleaded each of their consumer protection statutes.

Defendants further make arguments that the Plaintiffs' consumer protection claims under Hawaii, Pennsylvania, Massachusetts, New York, and Illinois.

**Hawaii**. It is true that only "consumers" *i.e.*, natural persons, may sue for "unfair or deceptive acts or practices" under Haw. Rev. Sta. § 480-1. Hawaii's law also allows claims for "unfair methods of competition" and "any *person* may bring an action based on unfair methods

28

of competition." Haw. Rev. Stat. § 480-2 (a), (e) (emphasis added). A "person" includes "corporations, firms, trusts, partnerships, limited partnerships, limited liability partnerships, limited liability companies, and incorporated or unincorporated associations." Haw. Rev. Stat. § 480-1. Plaintiffs only brought claims under Haw. Rev. Stat. § 480-1, *et seq.* for unfair methods of competition and as Plaintiffs are "persons" they can maintain such a claim. *See MSP Recovery Claims, Series LLC, v. Sanofi-Aventis U.S. LLC,* No. 3:18-cv-2211 (BRM)(LHG), 2018 WL 831578, at *9 (D.N.J. Feb. 20, 2020).

**Pennsylvania.** Pennsylvania's Unfair Trade Practices and Consumer Protection Laws ("UTPCPL") does limit claims to purchases that are "primarily for personal, family or household purposes." 72 Pa. Stat. Ann. § 201-9.2(a). Third-party payors, like Plaintiffs' Assignors, have been held to be "persons" under the UTPCPL "who purchase[s] or lease[s] goods or services primarily for personal, family, or household purposes" and thus have the right to bring claims under the UTPCPL. *See Am. Fed'n County and Mun. Employees v. Ortho-McNeil-Janssen Pharms, Inc.,* No. 08-cv-5904, 2010 WL 891150, at *3-4 (E.D. Pa. 2010) (The "purpose" of this requirement focuses on whether the *final customer* uses the product for personal, family, or household use, not whether the third-party uses the product or simply purchases it); *see also, In re Actiq Sales & Mktg. Practices Litig.,* 790 F. Supp. 2d 313, 326-27 (E.D. Pa. 2011); *MSP Recovery Claims, Series LLC, v. Sanofi-Aventis U.S. LLC,* WL 831578, at *10.

**Massachusetts**. Indirect purchasers are not barred from bringing claims under the Massachusetts Consumer Protection Statute, Mass Gen. Laws, ch. 93A, *et seq. See In re Pharmaceutical Industry Average Wholesale Price Litig.,* 582 F. 3d 156, 192-193 (1st Cir. 2009) (affirming district court's decision that indirect purchasers could bring claims under § 11);

29

*Sergeants Benevolent*, 2018 WL 7197233, at *44 (holding that indirect purchaser actions are permitted under Massachusetts' consumer protection law); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, Civil Action No. 14-md-02503-DJC, 2015 WL 5458570, &*16 (D. Mass. Sept. 16, 2015) (holding that Massachusetts law permits claims by indirect purchasers).

**New York**. Defendants first allege that New York's General Business Law ("NYGBL") only covers deceptive acts that are "consumer-oriented" or directed at consumers. "Consumer-oriented" is to be liberally construed. *WorldHomeCenter.com, Inc. v. PLC Lighting, Inc.*, 851 F. Supp. 2d 494, 498 (S.D.N.Y. 2011). The critical question to determine standing under the NYGBL is whether the matter affects public interest, not whether the suit is brought by a consumer. *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002). "[C]ourts have found sufficient allegations of injury to the public interest where plaintiffs plead repeated acts of deception directed at a broad group of individuals." *Id.* Courts have repeatedly allowed corporations to bring claims under the NYGBL as long as the public interest is affected. *See Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris USA Inc.*, 344 F.3d 211, 218 (2d Cir. 2003); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 43 n.3 (E.D.N.Y. 2008); *In re Bextra & Celebrex Mtkg. Sales Practices and Prod. Liab. Litig.*, 495 F. Supp. 2d 1027, 1034 (N.D. Cal. 2007). Plaintiffs allegations are sufficient to allege Defendants' misconduct affected the public interest.

Defendants also argue that the NYGBL requires a showing that a defendant engaged in deceptive conduct and that allegations of anticompetitive conduct alone are insufficient to state a claim. Anticompetitive acts "constitute the kind of deceptive acts and practices contemplated by"

the NYGBL. *Feldman*, 210 F. Supp. 2d at 302 (collecting cases); *see also Macquarie Group Ltd.*, *v. Pacific Corporate Group, LLC*, 2009 WL 539928, at *9 (S.D. Cal. Mar. 2, 2009) (holding that antitrust violation constituted deceptive conduct under the NYGBL); *In re TFT-LCD (Flat Panel) Antitrust Litig*., 586 F. Supp. 2d 1109, 1127-1128 (N.D. Cal. 2008).

**Illinois**. Defendants allege that Plaintiffs cannot bring a claim under the Illinois Consumer Fraud Act ("ICFA") because the statute may not be used to bring indirect purchaser class action claims that would be prohibited under the Illinois Antitrust Act. As discussed above, Plaintiffs may bring a class action claim under the Illinois Antitrust Act and accordingly may also bring a claim under Illinois consumer protection statute. *See Sergeants Benevolent*, 2018 WL 7197233, at *42 (holding that the Illinois consumer protection statute does not prohibit class actions and claims under recovery for anticompetitive conduct under the ICFA is not barred); *see also Batson v. Live Nation Entertainment, Inc*., 746 F.3d 827, 831 (7th Cir. 2014) ("It remains possible, however, that an unfair practice might be covered by both the antitrust law and Consumer Fraud Act[.]").

## CONCLUSION

As the foregoing should adequately confirm, Plaintiffs' Second Amended Complaint has plausibly alleged causes of action against each defendant – Mallinckrodt, ExpressScripts, CuraScript, and United Biosource Corporation – for federal and state antitrust injury and conduct that violates the specific state consumer protection statutes invoked. Therefore, Plaintiffs respectfully request that this Court deny each set of Defendants' respective motions to dismiss. Should the Court find any specific shortcoming that would support granting either motion,

Plaintiffs respectfully request oral argument and ultimately, if unresolved, leave to amend to cure the deficiency.

Dated: September 23, 2020     Respectfully submitted,

          By:  */s/ David M. Hundley*
              David M. Hundley

              **Pendley, Baudin & Coffin, LLP**
              David M. Hundley
              Tracy L. Turner
              Anna K. Higgins
              1100 Poydras St Ste 2505
              New Orleans, LA 70163
              Telephone: (504) 355-0086
              dhundley@pbclawfirm.com
              tturner@pbclawfirm.com
              ahiggins@pbclawfirm.com
              *Counsel for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on September 23, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all parties of record.

         */s/ David M. Hundley*