**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| MSP RECOVERY CLAIMS, SERIES LLC, *et al.*, | Case No. 3:20-cv-50056 |
| Plaintiffs, | District Judge Iain D. Johnston |
| v. | Magistrate Judge Lisa A. Jensen |
| EXPRESS SCRIPTS INC., *et al.*, | |
| Defendants. | |

**THE EXPRESS SCRIPTS ENTITIES' AND NON-PARTY EPIQ SYSTEMS, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND CROSS-MOTION FOR
<u>A STAY OF DISCOVERY ON DISCOVERY</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................................. 1

BACKGROUND.................................................................................................. 3

ARGUMENT .................................................................................................. 5

I.    MSP Has Not Shown the Requisite Specific, Tangible Evidence of Any Non-Compliance With Discovery Obligations Necessary to Obtain Discovery on Discovery ................................................................................................. 5

    A.    There Must Be Specific, Tangible Evidence of Non-Compliance With Discovery Obligations, Not Merely Questions About Document Productions.................................................................................... 5

    B.    MSP Has Not Even Tried to Provide the Requisite Specific Evidence That It Is Entitled to the Majority of Discovery It Seeks ............................................. 7

    C.    MSP Has Not Established That It Is Entitled to Discovery on Discovery for the Discovery Its Motion Does Address........................................ 8

        1.    MSP Has Provided No Basis For Discovery Into the Productions From the Supplemental and Historical Archives...................................... 8

        2.    MSP Has Not Shown It Is Entitled to Discovery On the Express Scripts Entities' Document Retention Policies ........................................ 9

        3.    MSP Has Provided No Basis for Discovery Into the Express Scripts Entities' Litigation Holds............................................................ 11

        4.    There Is No Credible Evidence That Documents Were Improperly Deleted for Any Custodians ................................................................ 14

II.    There Is No Basis for Any Discovery From Epiq....................................... 18

III.    In the Alternative, Good Cause Exists for the Court to Issue a Stay Precluding MSP From Receiving Discovery on Discovery........................................... 20

CONCLUSION.................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agility Pub. Warehousing Co. K.S.C. v. Dep't of Def.*,
    2017 WL 1214424 (D.D.C. Mar. 30, 2017)................................................................... 13, 17

*AOT Holding AG v. Archer Daniels Midland Co.*,
    2021 WL 6118175 (C.D. Ill. Sept. 3, 2021)................................................................ 11, 12

*Brand Energy & Infrastructure Servs. v. Irex Corp.*,
    2018 WL 806341 (E.D. Pa. Feb. 7, 2018) ............................................................................ 6

*Brown v. Crete Monee Cmty. Unit Sch. Dist., No. 201 U*,
    2022 WL 1620024 (N.D. Ill. May 23, 2022) ....................................................................... 6

*Does 1-5 v. City of Chi.*,
    2019 WL 2994532 (N.D. Ill. July 9, 2019)........................................................................ 16

*Ford Motor Co. v. Edgewood Props., Inc.*,
    257 F.R.D. 418 (D.N.J. 2009)............................................................................................. 6

*Grant v. Witherspoon*,
    2019 WL 7067088 (S.D.N.Y. Dec. 23, 2019)..................................................................... 6

*Gross v. Chapman*,
    2020 WL 4336062 (N.D. Ill. July 28, 2020)..........................................................5, 6, 9, 14

*Hubbard v. Potter*,
    247 F.R.D. 27, 29 (D.D.C. 2008) ....................................................................................... 6

*In re Caesars Entm't Operating Co., Inc.*,
    2018 WL 2431636 (Bankr. N.D. Ill. May 29, 2018) ........................................................... 7

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
    770 F. Supp. 2d 1299 (N.D. Ga. 2011)............................................................................. 14

*In re Honeywell Int'l, Inc. Sec. Litig.*,
    230 F.R.D. 293 (S.D.N.Y. 2003) ........................................................................................ 9

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
    2013 WL 5274296 (N.D. Ill. Sept. 18, 2013)................................................................... 19

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
    2013 WL 791432 (N.D. Ill. Mar. 4, 2013)....................................................................... 18

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
  296 F. Supp. 3d 1230 (D. Or. 2017)......................................................................... 19

*In re Whatley v. Canadian Pac. Ry. Ltd.*,
  2021 WL 1951003 (D.N.D. May 14, 2021)............................................................... 7

*Ingersoll v. Farmland Foods, Inc.*,
  2011 WL 1131129 (W.D. Mo. Mar. 28, 2011)....................................................... 11

*Major Tours, Inc. v. Colorel*,
  2009 WL 2413631 (D.N.J. Aug. 4, 2009)............................................................... 11

*Muro v. Target Corp.*,
  250 F.R.D. 350 (N.D. Ill. 2007)............................................................................. 11

*Norman-Nunnery v. Madison Area Tech. Coll.*,
  625 F.3d 422 (7th Cir. 2010)........................................................................... 12, 14

*Orillaneda v. French Culinary Institute*,
  2011 WL 4375365 (S.D.N.Y. Sept. 19, 2011)......................................................... 9

*OSF Healthcare Sys. v. SEIU Healthcare IL Pers. Assistants Health Plan*,
  2021 WL 7708963 (N.D. Ill. Oct. 4, 2021)............................................................ 20

*Pable v. Chi. Transit Auth.*,
  2021 WL 4789028 (N.D. Ill. Sept. 13, 2021)......................................................... 18

*Point Blank Sols., Inc. v. Toyobo Am., Inc.*,
  2011 WL 1456029 (S.D. Fla. Apr. 5, 2011)...................................................... 14, 15

*Putco, Inc. v. Carjamz Com Inc.*,
  2021 WL 492902 (N.D. Ill. Feb. 10, 2021)............................................................. 7

*Shapo v. Engle*,
  2001 WL 629303 (N.D. Ill. May 25, 2001)............................................................. 2

*Sonrai Sys., LLC v. Romano*,
  2021 WL 1418405 (N.D. Ill. Jan. 20, 2021)......................................................... 12

*West v. Miller*,
  2006 WL 2349988 (N.D. Ill. Aug. 11, 2006)........................................................... 7

## Rules and Regulations

Fed. R. Civ. P. 26(b)(1) ............................................................................................ 7

## INTRODUCTION

The basis for MSP's motion is a purported "absence" of documents from 2007–2012, *five to ten years before* MSP even filed its case. Based on that unremarkable and wholly unsurprising observation, MSP seeks to secure discovery on discovery from both the Express Scripts Entities and their third-party discovery vendor, Epiq Systems, Inc. ("Epiq"). The scope of that discovery is neither narrow nor targeted. To the contrary, MSP seeks an order from the Court permitting it to seek discovery spanning a 15-year period on 51 topics (including sub-parts) and the production of "all" documents responsive to 5 sweeping document requests from the Express Scripts Entities, and on 12 topics and "all" documents responsive to a staggering 29 document requests from Epiq. But as the Court knows, the standard for obtaining any discovery on discovery, let alone what MSP seeks here, is a high bar. It requires a specific, tangible, factual showing that a party has affirmatively failed to comply with its discovery obligations—not just that another party has raised speculative questions about the discovery process. MSP does not come close to meeting this high standard.

Although MSP spends many pages rehashing stale issues already addressed—particularly in the Express Scripts Entities' October 18 letter—it does not even *try* to answer the simple question that this Court repeatedly has posed: Why does it matter? That is because the discovery MSP seeks definitively does *not* matter. Indeed, if MSP's motion shows anything, it is that the Express Scripts Entities: (i) have fully complied with their discovery obligations in this case; (ii) promptly produced documents from the Supplemental and Historical Archives after becoming aware of the issue; (iii) were under no obligation to preserve documents before Rockford filed suit in April 2017; (iv) did not fail to comply with their own document retention policies; and (v) did not fail to properly preserve and produce documents from any custodians. This bears emphasizing: MSP (and Rockford in its companion motion), seeks discovery on discovery *not* because of the

1

absence of documents—in fact, Plaintiffs have known *for years* that the Express Scripts Entities likely would not, and indeed did not, have all documents from the early time period alleged in the complaint (a decade before this lawsuit)—but rather from the *discovery and production of additional documents* predating MSP's complaint by *years*. MSP also seeks this extraordinary discovery without even having downloaded all of the Express Scripts Entities' productions (including custodial documents from Gayle Johnston and Rob Osborne), and misrepresenting the facts about another custodian (Melissa Beatty). To the extent there may be some narrow questions that remain, it is unclear why MSP needs to answer them through discovery on discovery.

MSP is correct that "[d]iscovery is a search for the truth." ECF No. 607 ("Mem.") at 1 (quoting *Shapo v. Engle*, 2001 WL 629303, at *2 (N.D. Ill. May 25, 2001)). But the discovery sought here is not a "search for the truth," let alone the search for the truth of the allegations brought by MSP (and by Rockford). MSP confirmed as much by admitting that the "end result" of the proposed discovery would be to seek sanctions against the Express Scripts Entities to prevent them from "question[ing] witnesses concerning the time period and the events for which they had no custodial document," and preclude them from receiving any favorable "negative inference" from that testimony. Nov. 16, 2022 Hr'g Tr. at 11:12–12:7. By its own admission, MSP's goal is not to obtain the truth, but to avoid it through unwarranted exclusionary sanctions. MSP's motion, like Rockford's motion, is fundamentally a last-ditch attempt to avoid adjudication on the merits and create a side show that has nothing to do with its actual claims.

Finally, MSP is a particularly inapt party to be seeking something as extraordinary as discovery on discovery. As the Court knows, MSP does not have a complaint that has survived a motion to dismiss: two prior complaints were dismissed and a motion to dismiss its Third Amended Complaint is pending. It is one thing to allow MSP to participate in merits discovery to

help ensure efficient and non-duplicative discovery with the *Rockford* case. It is quite another to allow a party that, despite repeated chances, still does not have a viable complaint, to seek discovery on discovery. Thus, in the alternative, the Express Scripts Entities move to stay this discovery sought by MSP if the Court is otherwise inclined to grant MSP's motion.

## BACKGROUND

Discovery in this case has been painstakingly litigated for years. Through extensive negotiations between the parties and motion practice before the Court, the Express Scripts Entities agreed to produce documents from 60 custodians using a set of 117 search terms for the pre-April 30, 2019 time period. When the case restarted in April 2022, the Express Scripts Entities produced what they understood to be their final set of documents from this pre-April 2019 time period. Subsequently, the Court ordered the Express Scripts Entities to produce additional discovery from the post-April 2019 time period, using a set of 13 custodians and 38 search terms.

On September 12, 2022, Rockford flagged that the Express Scripts Entities had produced certain documents in their post-April 2019 productions that were dated before April 30, 2019. Pls.' Ex. 8. As explained in the September 19, 2022 notice to the Court, the Express Scripts Entities reasonably believed all sources of potentially relevant pre-2019 documents had been identified, collected, and searched, but they still immediately undertook further research in response to Rockford's letters. ECF No. 564 at 1. During their review, the Express Scripts Entities learned that certain collection processes inadvertently had been overlooked because they identified (1) a historical email archive (the "Historical Archive") that resided with Epiq that had not been searched for collection, and (2) an archive of unproduced documents (the "Supplemental Archive"), largely duplicative of the original collection, that contained pre-2019 documents for a limited set of custodians. *Id*. at 1–2.

As further explained in subsequent court hearings and the Express Scripts Entities' October

18, 2022 letter to Plaintiffs, the Historical Archive is a legacy Express Scripts email archive called "Mimosa," which the Express Scripts Entities used before 2013. Pls.' Ex. 2 at 4. It is not a complete archive of all emails, but rather only contains email files from certain individuals who were subject to litigation holds in 2014 when Mimosa was decommissioned. *Id*. Even for those individuals whose documents were retained in the Historical Archive, it is not necessarily an archive of all emails sent before 2013, but rather what was available in the archive at that time. *Id*.

The Supplemental Archive preserved limited exports of documents from certain custodians whose mailboxes, while on litigation hold, exceeded the data size cap for litigation holds, which caused the custodian's email to stop working. *Id*. To ensure that all emails were preserved, the custodian's "dumpster" folder on the Exchange email system was copied and exported, and the active dumpster folder was removed from the active Exchange folder. *Id*. Those exported files were then preserved consistent with the Express Scripts Entities' litigation hold obligations. *Id*. This process was used between 2017 and March 2020, after which the data size cap was removed and the process was no longer required. *Id*.

Pursuant to the Court's October 4, 2022 Minute Entry Order, *Rockford* ECF No. 698, the Express Scripts Entities completed their production of documents from both Archives—as well as their production of documents from the post-April 2019 period—on October 10, 2022. As a result, all documents from both Archives were produced more than five-and-a-half months before the current close of fact discovery in this case. Pursuant to the same order, the Express Scripts Entities sent a 26-page, single-spaced letter to Plaintiffs on October 18, 2022 addressing in great detail both their production of documents from the two Archives, as well as a number of other questions about their production posed by Plaintiffs. Pls.' Ex. 2.

In the midst of these efforts, MSP served the Express Scripts Entities with an amended

Rule 30(b)(6) deposition notice on September 22, 2022 (after serving an initial notice on September 15, 2022), seeking testimony from a corporate representative on 51 topics (including sub-topics) as well as five document requests, covering areas that include: (1) the Express Scripts Entities' policies and procedures involving document retention, preservation, and litigation holds; (2) the Express Scripts Entities' September 19, 2022 letter to Plaintiffs and September 19, 2022 notice to this Court about their document production; and (3) the August 29, 2022 declaration submitted by counsel for the Express Scripts Entities. *See* Pls.' Ex. 11. On October 20, 2022, MSP served a separate 30(b)(6) notice on the Express Scripts Entities' document discovery vendor, Epiq, with 12 topics and 29 document requests covering those same general issues. *See* Pls.' Ex. 13. MSP never met and conferred with the Express Scripts Entities or Epiq either before or after serving the original or amended Rule 30(b)(6) notices as required by the Rule.

## **ARGUMENT**

I. **MSP Has Not Shown the Requisite Specific, Tangible Evidence of Any Non-Compliance With Discovery Obligations Necessary to Obtain Discovery on Discovery**

A. **There Must Be Specific, Tangible Evidence of Non-Compliance With Discovery Obligations, Not Merely Questions About Document Productions**

As the Court has observed, there must be "a factual basis" before a party can obtain discovery on discovery, ***"[s]imply saying that you don't believe them or that there should be documents and there aren't . . . [is] not enough."*** Sept. 15, 2020 Hr'g Tr. at 17:2–13 (emphasis added). Thus, "there should be no discovery on discovery, absent an agreement between the parties, or ***specific, tangible, evidence-based indicia*** (versus general allegations of deficiencies or mere 'speculation') of a ***material failure*** by the responding party ***to meet its obligations***." *Gross v. Chapman*, 2020 WL 4336062, at *2 (N.D. Ill. July 28, 2020) (quoting The Sedona Conference, The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 Sedona Conf. J. 1 (2018)) (emphasis added).

Otherwise, "[d]iscovery—long and mind-numbingly tedious enough as it often is—would never end if all it took to keep it going were the insistence that more documents exist." *Brown v. Crete Monee Cmty. Unit Sch. Dist., No. 201 U*, 2022 WL 1620024, at *3 (N.D. Ill. May 23, 2022) (citing *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008)). As Judge Johnston has recognized, "discovery need not be perfect, only reasonable." *DR Distribs., LLC v. 21 Century Smoking, Inc.*,— F. Supp. 3d —, 2022 WL 2905838, at *3 n.4 (N.D. Ill. July 22, 2022).

The burden is on the party seeking discovery on discovery to "provide an adequate factual basis to justify the discovery, and the Court must closely scrutinize the request in light of the danger of extending the already costly and time-consuming discovery process ad infinitum." *Gross*, 2020 WL 4336062, at *2 (quoting *Grant v. Witherspoon*, 2019 WL 7067088, at *1 (S.D.N.Y. Dec. 23, 2019)). Mere speculation that relevant documents are missing or were destroyed "is never sufficient" to meet this burden. *Id.* at *3; *see also, e.g.*, *Brand Energy & Infrastructure Servs. v. Irex Corp.*, 2018 WL 806341, at *2 (E.D. Pa. Feb. 7, 2018) ("Federal courts will not compel a party to disclose its discovery process as a result of the opponent's mere suspicion that the party's process has not produced adequate documents.") (internal quotation marks and citation omitted); *Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 428 (D.N.J. 2009) (requiring a "colorable showing that [a party] is purposefully (or even negligently) withholding documents" or acting in "bad faith").

Contrary to MSP's attempt to reframe the case law, it is not enough that a party has questions about another party's document productions. Instead, as each of the cases MSP cites demonstrates, there must be some factual basis to believe a party has not complied with its discovery obligations, *i.e.*, a specific, factual basis to believe that a party has not produced documents they should have produced. Thus, courts have found a sufficient factual basis where,

for example, counsel admits that no litigation hold was issued in a case, *In re Caesars Entm't Operating Co., Inc.,* 2018 WL 2431636, at *10, *13 (Bankr. N.D. Ill. May 29, 2018),[1] or a party provides inconsistent statements regarding an "unusually convoluted" discovery process—including numerous refusals to comply with a subpoena and court orders—with issues that remain unresolved and unexplained after "closely scrutinizing" the "factual basis" for the discovery, *In re Whatley v. Canadian Pac. Ry. Ltd.*, 2021 WL 1951003, at *1–3, 10 (D.N.D. May 14, 2021).

MSP does not, and cannot, provide any such evidence here. Even if it could point to any factual basis supporting its discovery on discovery, its expansive discovery certainly is not proportional to the needs of this case, which is currently subject to a motion for complete dismissal and for which merits discovery is ongoing, especially given that the normal meet-and-confer process likely could answer whatever legitimate questions it has. *See* Fed. R. Civ. P. 26(b)(1).

### B. MSP Has Not Even Tried to Provide the Requisite Specific Evidence That It Is Entitled to the Majority of Discovery It Seeks

The discovery MSP seeks through its 30(b)(6) deposition notices and accompanying document requests is significantly broader, more tangential, and more intrusive than the discovery described in its motion to compel (which is addressed in Section I.C. below). For a substantial majority of these topics—many of which are hopelessly broad and directly ask for discovery on privileged communications and work product—MSP provides *absolutely no* argument or explanation as to why this Court should compel a response by the Express Scripts Entities or non-party Epiq. *See West v. Miller*, 2006 WL 2349988, at *2 (N.D. Ill. Aug. 11, 2006) ("[F]ailure to make even a colorable initial showing as to relevance can doom a motion to compel.").

---

[1]  MSP cites the Court's opinion in *Putco, Inc. v. Carjamz Com Inc.*, 2021 WL 492902 (N.D. Ill. Feb. 10, 2021) as supporting a lower standard, but there, the party seeking the protective order never argued the non-moving party had not made this threshold showing. *See id.* at *5 ("Defendant argues that this topic is overbroad and burdensome because the discovery responses cover a myriad of topics and such a request is better suited for a contention interrogatory.").

Accordingly, this Court should neither permit MSP to seek 30(b)(6) testimony from either the Express Scripts Entities or Epiq nor compel them to produce documents on the following proposed topics and requests:

- Express Scripts Entities' 30(b)(6) Topic Nos. 5, 9–14, 20–21, 23–25;

- Epiq 30(b)(6) Topic Nos. 2–3, 9, 11–12; and

- Epiq Document Request Nos. 5–10, 12–14, 16–19, 21–23, 26–28.

Pls.' Ex. 11 at 6–10; Pls.' Ex. 13 at 13–16, 23–24.

### C. MSP Has Not Established That It Is Entitled to Discovery on Discovery for the Discovery Its Motion Does Address

#### 1. MSP Has Provided No Basis For Discovery Into the Productions From the Supplemental and Historical Archives

At the October 21 hearing, the Court was unequivocal that the production of documents from the Supplemental and Historical Archives does not justify discovery on discovery:

> I am not going to allow discovery or depositions. If you are telling me you want to take discovery on how this error happened, not relevant. If it happened, it was found. It's rectified.

Oct. 21, 2022 Hr'g Tr. at 40:11–14. MSP's motion provides no basis to revisit that conclusion.

Although MSP asserts that the Express Scripts Entities "have failed to satisfactorily explain" how these documents were not produced earlier, Mem. at 13, MSP does not explain why their detailed explanation is unsatisfactory or point to any new information the Court has not previously considered and rejected. Instead, MSP relies almost exclusively on comments made at the October 4 hearing—*before* the Court subsequently explained its views at the October 21 hearing—and entirely ignores the October 18 letter that explained in detail what each of these Archives are and what they contain, including, for example, that the Supplemental Archive was in place from 2017 to March 2020, Pls.' Ex. 2 at 4, answering MSP's question as to why many documents from the Archives were produced from the post-2014 time period, Mem. at 2, 7.

More importantly, MSP does not try to explain why this information is relevant or otherwise answer the Court's basic question, "[W]hat does it matter why it wasn't found?" Oct. 21, 2022 Hr'g Tr. at 41:1–2. As the Court observed, it makes little sense to argue the production of additional documents from the Archives demonstrates the Express Scripts Entities did not comply with their discovery obligations. *Id.* at 39:15–16 ("So we are doing all this because they produced too many documents?"). Instead, it shows they did comply with their obligations—the exact opposite of what MSP must show. *See Gross*, 2020 WL 4336062, at *4.

## 2. MSP Has Not Shown It Is Entitled to Discovery On the Express Scripts Entities' Document Retention Policies

MSP's basis for seeking discovery on the Express Scripts Entities' document retention policies is premised on the speculative and unsupported assertion that the Express Scripts Entities "seemingly" violated those policies by not producing certain custodial files "for the years 2008 to 2012" and "pre-October 2011." Mem. at 2–3, 8. MSP offers no evidence in support of these bald assertions, and this failure of proof alone requires denial of its requested document retention discovery. *See In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 302 (S.D.N.Y. 2003) (denying motion to compel production of document retention policies because plaintiffs lacked "a concrete basis for th[e] request"); *Orillaneda v. French Culinary Institute*, 2011 WL 4375365, at *6-*7 (S.D.N.Y. Sept. 19, 2011) (granting protective order because plaintiff did not make "a specific showing that defendant's production is deficient").

Moreover, MSP's brief only confirms what the Express Scripts Entities disclosed to the parties at the outset of this case in their October 15, 2018 ESI Disclosures. Namely, that under the Express Scripts Entities' document retention policy, emails that are not defined business records "may" only be retained for up to two years and that "there may be ESI that plaintiffs request that has been destroyed pursuant to the Policy, or has otherwise been lost" due to the passage of time

9

between the events in question and MSP's lawsuit. Pls.' Ex. 15 at 2–3. None of this is new. It was all disclosed in 2018 in accordance with the parties' negotiated agreement on the production of document retention policies. ESI Protocol § IV, ECF No. 137. There is nothing suspicious or untoward about the Express Scripts Entities producing only what *the parties have agreed* they are required to produce.

MSP tries to further distract from the relevant standard for discovery by claiming that the Express Scripts Entities should have preserved and produced "virtually all" custodial documents because they constitute "business records" under the document retention policy. Mem. at 15. This is incorrect and in direct contradiction to the policy, which, far from being "vague and unclear" as MSP alleges (without further explanation), *id*. at 8, states that "business records are maintained for varying lengths of time, depending on content type or purpose, and governing law," and "[e]mails that do not constitute business records may be retained for up to two years." Pls.' Ex. 15 at 2. In other words, routine emails do not constitute "business records," and the Express Scripts Entities were not *required* to retain those emails for any amount of time.[2] Moreover, given that the Express Scripts Entities were not under any obligation to retain routine emails until Rockford filed suit in April 2017, *see* Section I.C.3 below, there is no reason to require discovery on document retention polices that is premised on allegedly missing documents that *predate the Rockford lawsuit by a decade*. MSP has presented no credible, fact-based evidence that would require production of the Express Scripts Entities' document retention policies; its sole basis for doing so is its own belief that documents from 2008 to 2012—five to ten years before the *Rockford* lawsuit—*should* exist.

Finally, MSP suggests that the Express Scripts Entities' description of their document

---

[2]  Even if some of the custodial emails might arguably constitute business records, there is no requirement under the document retention policy that they be retained *indefinitely*.

retention policy conflicts with the description provided in response to a 2015 Texas civil investigative demand ("Texas CID"). Mem. at 2, 17. Those descriptions are perfectly compatible. CuraScript responded to the Texas CID that it "maintains documents in accordance with applicable state and federal retention requirements," Pls.' Ex. 20 at 5, which is fully consistent with the Express Scripts Entities' ESI disclosures in this case, which state that documents are retained for "varying lengths of time, depending on," among other things, "governing law," Pls.' Ex. 15 at 2.

### 3. MSP Has Provided No Basis for Discovery Into the Express Scripts Entities' Litigation Holds

MSP also seeks discovery into the Express Scripts Entities' litigation holds in this case and in *Rockford*. "As a general matter hold letters are not discoverable" and are routinely protected from disclosure by the attorney-client privilege and the work product doctrine. *Ingersoll v. Farmland Foods, Inc.*, 2011 WL 1131129, at *17 (W.D. Mo. Mar. 28, 2011) (quoting *Major Tours, Inc. v. Colorel*, 2009 WL 2413631, at *2 (D.N.J. Aug. 4, 2009)); *see also, e.g.*, *Muro v. Target Corp.*, 250 F.R.D. 350, 360 (N.D. Ill. 2007), *aff'd*, 580 F.3d 485 (7th Cir. 2009) (finding litigation hold notices were subject to attorney-client privilege and work product protection). MSP does not even try to argue that the Express Scripts Entities' litigation holds are not privileged.

Nor does MSP argue that there has been any spoliation or non-compliance with preservation obligations based on the litigation holds issued in *this* case (because there is none). As MSP's own case law states, obtaining discovery on litigation holds, "requires at least 'an adequate factual basis for an inquiry' before it is permitted." *AOT Holding AG v. Archer Daniels Midland Co.*, 2021 WL 6118175, at *4 (C.D. Ill. Sept. 3, 2021). There, the court found that, in the absence of a showing that the litigation holds were improperly implemented, discovery into the party's litigation holds and "process for preserving records and complying with discovery" "has no current relevance to either party's claims or defenses and threatens to impugn the attorney client

11

privilege." *Id*. at *7. Although MSP tries to lump in litigation holds with a series of cases addressing document retention policies, *see* Mem. 10–11, it cites only one case ordering discovery into a party's litigation hold, *Ceasars*. But there, counsel stated a litigation hold was never issued. *Ceasars*, 2018 WL 2431636, at *10, 13. There is no evidence—testimony or otherwise—that a litigation hold was not issued in this case or that the Express Scripts Entities otherwise failed to comply with their preservation obligations.

Having no evidence *in this case* supporting its request, MSP instead offers the ludicrous proposition that the Express Scripts Entities' preservation obligation somehow began *before* Rockford filed suit. Mem. at 16–17. However, there is "no duty to preserve anything" until a party knows, or should know, that litigation is "imminent." *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008); *Norman-Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422, 429 (7th Cir. 2010) (if "documents were lost before [defendant] knew or should have known that litigation was imminent," "there is nothing suspicious about the [defendant's] inability to say when or how the documents disappeared"). The mere "possibility of litigation does not create a duty to preserve evidence." *Sonrai Sys., LLC v. Romano*, 2021 WL 1418405, at *18 (N.D. Ill. Jan. 20, 2021), *report and recommendation adopted*, 2021 WL 1418403 (N.D. Ill. Mar. 18, 2021).

Ignoring this precedent, MSP asks the Court to order discovery based on the suggestion that documents should have been preserved based on vague and unspecified allusions to "many litigations and investigations against Defendants." Mem. at 16. In substance, though, MSP only addresses two such cases, neither of which triggered any preservation obligation for the Express Scripts Entities. The first, which relates to a subpoena CuraScript received in connection with a *securities lawsuit* filed *against Questcor* in 2013, Mem. at 16 n.16, had nothing to do with the Express Scripts Entities, much less any alleged antitrust conspiracy. Instead, the allegations in

that case centered around allegedly misleading statements made by Questcor about the prospects for Acthar and stock buybacks used to prop up Questcor's stock price. *See* Pls.' Ex. 17 ¶¶ 1–2.

The second action MSP cites is the March 2015 Texas CID. Mem. at 17. Again, on its face, this investigation had nothing to do with the Express Scripts Entities: the demand notes that the Attorney General's office was investigating *Questcor's* acquisition "of the rights to market Synacthen;" it makes no reference to any of the Express Scripts Entities' purported involvement in the acquisition. Moreover, the demand does not seek information from CuraScript as a target, but rather seeks it on the belief that CuraScript "may have information relevant to its investigation." Pls.' Ex. 19 at 1. The demand was satisfied by the Express Scripts Entities responding to certain interrogatories, and by producing pharmacy claims data for Acthar patients (which has been reproduced in this case). Pls.' Ex. 20 at 2–4.

Neither of these situations come close to meeting the standard necessary to trigger preservation obligations. Each involved Mallinckrodt alone and neither was targeted at the Express Scripts Entities.[3] *See, e.g.*, *Agility Pub. Warehousing Co. K.S.C. v. Dep't of Def.*, 2017 WL 1214424, at *2 (D.D.C. Mar. 30, 2017) ("non-parties do not usually have preservation obligations"). Furthermore, neither involved any allegation that the Express Scripts Entities conspired with Mallinckrodt or that CuraScript's distribution agreement with Mallinckrodt was anti-competitive. *See, e.g.*, *Rockman Co. (USA), Inc. v. Nong Shim Co., Ltd*, 229 F. Supp. 3d 1109, 1123 (N.D. Cal. 2017) (no duty to preserve documents given the "absence of evidence" that prior investigation extended to the "alleged collusion" in the instant case). There is no evidence these

---

[3] As the subject of these actions, Mallinckrodt likely had much different preservation obligations that may have been triggered far earlier. Thus, that Mallinckrodt produced some pre-2012 emails that the Express Scripts Entities no longer have is not evidence of spoliation or a failure to comply with discovery obligations, but rather that Mallinckrodt alone was the target of these actions.

investigations reflected "imminent" litigation involving the Express Scripts Entities, let alone that they would have triggered the broad preservation obligations that MSP implies.

Even if these investigations may have triggered a duty to preserve documents in connection with those investigations, that duty does not extend to subsequent litigants, like MSP. *See Point Blank Sols., Inc. v. Toyobo Am., Inc.*, 2011 WL 1456029, at *1 (S.D. Fla. Apr. 5, 2011) ("[T]he alleged destruction of evidence arose primarily when Defendants were under a duty to *others* . . . but not necessarily these Plaintiffs . . . . In other words, the parties who do (or did) have standing to seek spoliation sanctions have not pursued them."); *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d 1299, 1308 (N.D. Ga. 2011) ("[U]pon receipt of the CID, Delta had a duty to the *DOJ* to preserve and produce all relevant documents. However, the Court has difficulty accepting the notion that at that time, as a matter of law Delta immediately owed the same duty to *Plaintiffs*.").

In short, the Express Scripts Entities were under no obligation to preserve documents prior to Rockford's lawsuit and there is "nothing suspicious" about documents that no longer exist from five years before, much less a decade. *Norman-Nunnery*, 625 F.3d at 429. MSP cannot provide a basis for asserting that there has been any spoliation or failure to comply with discovery obligations that is the prerequisite to receiving discovery on discovery. *Gross*, 2020 WL 4336062, at *4.

### 4. There Is No Credible Evidence That Documents Were Improperly Deleted for Any Custodians

MSP argues that, if nothing else, the Express Scripts Entities' alleged failure to preserve documents for Gayle Johnston, Melissa Beatty, and Rob Osborne supports the discovery sought here. The facts, however, show otherwise, and only confirm that MSP has utterly failed to provide the requisite "specific, tangible, evidence-based indicia," *Id.* at *2, that there was any issue with the preservation of these custodians' documents. Indeed, most of the issues MSP raises were

addressed in the Express Scripts Entities' October 18 letter.

**Gayle Johnston.** As explained in the October 18 letter, the Express Scripts Entities have produced 5,258 documents from Ms. Johnston's custodial files. Pls.' Ex. 2 at 16. Thus it is not surprising that MSP does not raise an issue with the production of her documents from the 2013–2017 time period. Instead, MSP focuses solely on the lack of custodial documents for Ms. Johnston from the 2008–2012 time period. Mem. at 14. But as the Express Scripts Entities have explained, Ms. Johnston's custodial documents from the 2008–2012 time period were not among those preserved in the Historical Archive because she was not under a litigation hold in 2014. Pls.' Ex. 2 at 16. As discussed, the Express Scripts Entities were under no obligation to preserve Ms. Johnston's documents in connection with either the *Rockford* or *MSP* litigation until 2017, nor were they required to do so pursuant to applicable document retention policies.

MSP's wild speculation that Ms. Johnston may have been under litigation hold in *other* cases prior to 2014, Mem. at 16, has no basis in fact. Nor, as explained above, does it matter, as the Express Scripts Entities' obligation to retain documents derives only from this case, not other litigation. *See Point Blank*, 2011 WL 1456029, at *1. MSP similarly baldly asserts that Ms. Johnston's documents were required to be retained pursuant to the Express Scripts Entities' document retention policies. Mem. at 15–16. But MSP fails to cite any evidence for this, and the Express Scripts Entities' policy says only that such emails **may be** retained for **up to two years**—a time period that passed long before Rockford filed suit and for which the Express Scripts Entities *have* produced documents, as even MSP admits. *See id.* at 17.

Like Rockford before it, MSP offers a twisted reading of Ms. Johnston's deposition testimony to imply that she testified she had access to all of her documents dating back to 2008. *Id.* at 14. The Express Scripts Entities explained in the October 18 letter why her testimony said

no such thing. Pls.' Ex. 2 at 14–16. But to remove all doubt, Ms. Johnston's accompanying declaration clarifies that "as a general matter, I had access to my emails in 2017, such as they existed in 2017." Decl. of Gayle Johnston ¶ 7. Regarding the price change notifications and other similar correspondence at issue in MSP's motion, Ms. Johnston's declaration also states that she "did not routinely save or otherwise folder" them. *Id.* at ¶ 8.

In short, there is no evidence that the Express Scripts Entities failed to comply with their discovery obligations with regard to Ms. Johnston's custodial documents.

***Melissa Beatty.*** Melissa Beatty left Express Scripts in September 2015, nearly two years before Rockford's lawsuit. Decl. of Melissa Beatty ("Beatty Decl.") ¶ 3; Pls.' Ex. 22. There is no basis to assert that her documents were spoliated as opposed to simply not retained as a result of the normal document retention practices for departing employees. Although MSP asserts that her documents should have been retained because she left less than two years before Rockford filed suit, Mem. at 19, the document retention policies only provide that her custodial emails ***may*** be saved for ***up to*** two years; they do not ***require*** that they be saved for two years, let alone that they be saved for two years after she left. Most egregiously, MSP falsely states that Ms. Beatty worked as a consultant to the Express Scripts Entities after she left based solely on her Linkedin profile, Mem. at 18, n.19, which says no such thing, Pls.' Ex. 22. As a matter of fact, Ms. Beatty did not do any consulting work for the Express Scripts Entities after leaving. Beatty Decl. ¶¶ 3–4.

Moreover, there is no indication that the Express Scripts Entities would have been required to put Ms. Beatty on litigation hold immediately. *See Does 1-5 v. City of Chi.*, 2019 WL 2994532, at *5 (N.D. Ill. July 9, 2019) ("[T]he duty to preserve potentially discoverable information does not require a party to keep every scrap of paper."). MSP's assertion that Ms. Beatty is an indispensable source of documents is belied by the fact that it never sought to add her as a custodian

16

and has never noticed her deposition; she has never been identified in the Express Scripts Entities'
initial disclosures or ESI protocol disclosures; and even Rockford did not push to add her as a
custodian until February 2020, *see* Decl. of Meghan McCaffrey, Ex. A, and only added her to its
deposition list in July 2022, *id.*, Ex. B. Moreover, MSP has known for ***more than two and half
years*** that the Express Scripts Entities did not retain Ms. Beatty's documents, *id.*, Ex. A, yet only
now raises an issue with the Court. *See Agility Pub.*, 2017 WL 1214424, at *4 (denying motion to
compel where plaintiff "has known since May 2015 from whose inboxes the government pulled
responsive emails, so it is unclear to the Court why this has just now become an issue"). In short,
MSP's basis for singling out Ms. Beatty does not appear to be her importance, but rather as a
desperate hook to obtain discovery on discovery.

    ***Rob Osborne.*** MSP complains that the Express Scripts Entities did not produce emails
from Rob Osborne's custodial file before October 2011, Mem. at 19, but again provides no factual
basis supporting an inference that the Express Scripts Entities failed to comply with their discovery
obligations with regard to his documents. Put another way, MSP points to the production of ***eleven
years*** of custodial documents as purported evidence of non-compliance with discovery obligations.
There is no basis for the discovery sought here. As explained in the October 18 letter, the Historical
Archive is not a complete set of all emails dating back to 2007. Pls.' Ex. 2 at 4. Instead, it
represents which documents were preserved at the time Mimosa was decommissioned in 2014. *Id.*
For Mr. Osborne, this meant that the emails preserved on Mimosa only dated back to 2011. *See
id.* at 10. Critically, MSP does not and cannot cite any reason whatsoever why emails predating
2011 should have been preserved in connection with this case. Moreover, the Express Scripts
Entities ***have*** produced a number of custodial documents from Mr. Osborne from before 2011—
many of which have been used at depositions—just not emails from the Historical Archives.

MSP also questions how Mr. Osborne was able to locate and send to himself in 2014 a presentation created in 2007. Mem. at 20. As an initial matter, that a custodian could access a document in 2014 that no longer exists years later establishes nothing. But even setting that aside, the Express Scripts Entities *have* produced a stand-alone version of this very same document at ExpressScripts0578856 (produced to Plaintiffs in July 2019). In other words, this document was both ***preserved*** and ***produced***, and it therefore cannot possibly be used to show any deficiency.

## II. There Is No Basis for Any Discovery From Epiq

Courts have recognized that discovery of third-party vendors "is highly disfavored" and "appropriate only in egregious cases." *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 2013 WL 791432, at *4–5 (N.D. Ill. Mar. 4, 2013). Indeed, a court in this District has found that such discovery implicates Rule 26(b)(4)(D), which requires a party seeking discovery to "show[] exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." *See Pable v. Chi. Transit Auth.*, 2021 WL 4789028, at *2 (N.D. Ill. Sept. 13, 2021) (discovery into discovery vendor "implicates Rule 26(b)(4)" which requires a showing of "exceptional circumstances"). MSP has not shown that there are any such egregious circumstances here, nor that any such discovery could not be obtained by other means.

Indeed, it is entirely unclear from MSP's motion what Epiq has to do with *any* purported issues with the Express Scripts Entities' compliance with their discovery obligations, much less why a 30(b)(6) deposition and 29 document requests are necessary. Epiq is not involved in the collection of documents nor decisions around document retention and/or litigation holds. As the Express Scripts Entities previously have explained, while Epiq houses documents from the Historical Archive, those documents were transferred to Epiq for storage in 2014, and it was the Express Scripts Entities, not Epiq, that determined which documents to preserve and it is the Express Scripts Entities, not Epiq, that makes the decision to collect those documents. Epiq

operates at the direction of the Express Scripts Entities alone; it has no independent authority or power when it comes to the Historical Archive.

The only other basis MSP cites for obtaining discovery from Epiq is its assertion that the Supplemental Archive also resided with Epiq—apparently based solely on a misunderstanding of a statement made by the Express Scripts Entities' counsel at the October 4 hearing. Mem. at 1, 14. But MSP's assertion is incorrect, as explained at the same hearing. *See* Oct. 4, 2022 Hr'g Tr. at 23:7–10 (noting documents from the Supplemental Archive had been "ingested as part of that process in producing for the post-2019 production"). To the extent there was any confusion over that fact, that is the type of question that can be answered through the normal meet-and-confer process—there is no reason why extensive discovery is necessary to answer that question.

Moreover, as the document review vendor, Epiq is in constant contact with litigation counsel and all of its communications relating to this litigation are privileged attorney-client communications and attorney work product—indeed, essentially every single document request and deposition topic specifically calls for communications with counsel. *See In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 296 F. Supp. 3d 1230, 1246–47 (D. Or. 2017) (documents relating to Epiq and others providing "litigation-support for discovery" are privileged). Any discovery from Epiq would be little different from seeking discovery from opposing counsel, which is, of course, highly disfavored and for which MSP cannot satisfy any of the requirements. *See In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 2013 WL 5274296, at *2 (N.D. Ill. Sept. 18, 2013) (to depose an opposing attorney, a party must show "that: (1) the information sought is relevant to a major issue in the case; (2) there is no other means for obtaining the relevant information; (3) the need for the information outweighs the inherent risks of deposing opposition counsel; and (4) the information sought is not privileged.").

III.    **In the Alternative, Good Cause Exists for the Court to Issue a Stay Precluding MSP From Receiving Discovery on Discovery**

As the Court knows, MSP does not have a complaint that has survived a motion to dismiss; two prior complaints were dismissed and a motion to dismiss its Third Amended Complaint is pending.  It is one thing to allow MSP to participate in merits discovery without having passed the motion to dismiss stage for purposes of efficiency and preventing duplicative discovery with the *Rockford* case.  It is quite another to allow a party that, despite repeated chances, still does not even have a viable complaint to seek something as extraordinary as discovery on discovery.

For these reasons, if the Court does not deny MSP's motion outright, the Express Scripts Entities, in the alternative, request a stay of MSP's proposed discovery until after resolution of their motion to dismiss.  Although the filing of a motion to dismiss does not automatically stay discovery, "[s]tays of discovery are appropriate where, among other things, the motion to dismiss can resolve the case, where the motion raises a potentially dispositive threshold issue (such as a challenge to standing), or where ongoing discovery is unlikely to produce facts necessary to defeat the motion."  *OSF Healthcare Sys. v. SEIU Healthcare IL Pers. Assistants Health Plan*, 2021 WL 7708963, at *2 (N.D. Ill. Oct. 4, 2021) (citation omitted).  Accordingly, if the Court is otherwise inclined to grant MSP's motion, a stay of discovery is appropriate and warranted because the Express Scripts Entities' motion seeks to dismiss all claims against them and raises dispositive threshold issues of standing and timeliness, and because MSP's requested discovery would not produce any facts necessary to defeat the motion (which it already responded to).

## <u>CONCLUSION</u>

For the foregoing reasons, the Express Scripts Entities and Epiq respectfully request that the Court deny MSP's motion to compel or, in the alternative, enter an order staying any discovery on discovery from MSP.

Dated:  December 2, 2022          Respectfully Submitted,

                                  */s/ Eric C. Lyttle*
                                  Michael J. Lyle, Esq. (ARDC #6199227)
                                  Eric C. Lyttle, Esq. (*pro hac vice*)
                                  Meghan A. McCaffrey, Esq. (*pro hac vice*)
                                  Michael D. Bonanno, Esq. (*pro hac vice*)
                                  J. Matthew Hamann, Esq. (*pro hac vice*)
                                  J. Kirk Goza, Esq. (*pro hac vice*)
                                  QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                  1300 I Street NW, Suite 900
                                  Washington, DC 20005
                                  Tel: (202) 538-8000
                                  Fax: (202) 538-8100
                                  mikelyle@quinnemanuel.com
                                  ericlyttle@quinnemanuel.com
                                  meghanmccaffrey@quinnemanuel.com
                                  mikebonanno@quinnemanuel.com
                                  matthewhamann@quinnemanuel.com
                                  kirkgoza@quinnemanuel.com


                                  Jan H. Ohlander, Esq. (ARDC #3124934)
                                  RENO & ZAHM, LLP
                                  2902 McFarland Rd., Suite 400
                                  Rockford, IL 61107
                                  Tel: (815) 987-4050
                                  Fax: (815) 987-4092
                                  jho@renozahm.com


                                  ***Attorneys for Defendants Express Scripts Holding Co.,
                                  Express Scripts, Inc., CuraScript, Inc., Accredo Health
                                  Group, Inc. and United BioSource LLC and non-party
                                  Epiq Systems, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2022, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Eric C. Lyttle*

Eric C. Lyttle