**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DISTRICT**

|  |  |
|---|---|
| SERIES 17-03-615, a designated series of MSP RECOVERY CLAIMS, SERIES LLC; SERIES 21-12-1644, a designated series of MSP RECOVERY CLAIMS, SERIES LLC; and SERIES 21-12-1645, a designated series of MSP RECOVERY CLAIMS COM, SERIES LLC, | Case No. 3:20-cv-50056 |
|  | District Judge Iain D. Johnston |
| Plaintiffs, | Magistrate Judge Lisa A. Jensen |
| v. |  |
| EXPRESS SCRIPTS, INC.; EXPRESS SCRIPTS HOLDING COMPANY; CURASCRIPT, INC.; ACCREDO HEALTH GROUP, INC.; and UNITED BIOSOURCE, LLC, |  |
| Defendants. |  |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL
DEFENDANTS AND NON-PARTY EPIQ SYSTEMS, INC. TO PRODUCE
DOCUMENTS AND A CORPORATE REPRESENTATIVE FOR DEPOSITION AND
OPPOSITION TO A STAY OF DISCOVERY ON DISCOVERY**

# TABLE OF CONTENTS

I.   Plaintiffs' Motion Has Set Forth a Factual Basis to Obtain
     Discovery on Discovery...................................................................................... 2

     A.   Plaintiffs have Provided Specific Evidence of Defendants'
          Non-Compliance with their Discovery Obligations ............................................. 2

     B.   Plaintiffs have Provided Specific Evidence Regarding the Discovery Sought................. 4

     C.   Plaintiffs have Established They are Entitled to Discovery on Discovery ....................... 5

          1.   Plaintiffs have Provided the Requisite Basis for Discovery Into
               Productions from the Supplemental and Historical Archives ..................................... 5

          2.   Plaintiffs are Entitled to Discovery on Defendants' Document
               Retention Policies............................................................................................... 6

          3.   Plaintiffs Are Entitled to Litigation Hold Discovery ................................................. 8

          4.   Plaintiffs Provided Evidence that Custodial Documents were
               Improperly Deleted.............................................................................................. 8

II.  Plaintiffs are Entitled to Discovery from Epiq ............................................................. 12

III. There is No Basis for Defendants' Alternative Request to Issue a Stay
     Precluding Plaintiffs from Receiving Discovery on Discovery......................................... 14

CONCLUSION.................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Agility Pub. Warehousing Co. K.S.C. v. Dep't of Def.*,
    2017 WL 1214424 (D.D.C. Mar. 30, 2017) .......................................................................... 12

*AOT Holding AG v. Archer Daniels Midland Co.*,
    2021 WL 6118175 (N.D. Ill. Sept. 3, 2021) ...................................................................... 6, 6

*Brand Energy & Infrastructure Servs. v. Irex Corp.*,
    2018 WL 806341 (E.D. Pa. Feb. 7, 2018) ............................................................................. 3

*Brown v. Crete Monee Cmty. Unit Sch. Dist.*,
    2022 WL 1620024 (N.D. Ill. May 23, 2022) ......................................................................... 2

*DR Distribs., LLC v. 21 Century Smoking, Inc.*,
    2022 WL 2905838 (N.D. Ill. July 22, 2022) .......................................................................... 2

*Gross v. Chapman*,
    2020 WL 4336062 (N.D. Ill. July 28, 2020) ..................................................................... 2, 3

*In re Caesars Entm't Operating Co., Inc.*,
    2018 WL 2431636 (Bankr. N.D. Ill. May 29, 2018) .......................................................... 3, 8

*In re Honeywell Int'l, Inc. Sec. Litig.*,
    230 F.R.D. 293 (S.D.N.Y. 2003) ......................................................................................... 7

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
    2013 WL 791432 (N.D. Ill. Mar. 4, 2013) .................................................................... 12, 14

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
    296 F. Supp. 3d 1230 (D. Or. 2017) .................................................................................. 14

*In re Whatley v. Canadian Pac. Ry. Ltd.*,
    2021 WL 1951003 (D.N.D. May 14, 2021) .......................................................................... 3

*Major Tours, Inc. v. Colorel*,
    2009 WL 2413631 (D.N.J. Aug. 4, 2009) ............................................................................. 8

*McNally Tunneling Corp. v. City of Evanston*,
    2002 WL 59115 (N.D. Ill. Jan. 14, 2002) ........................................................................... 13

*Muro v. Target Corp.*,
    250 F.R.D. 350 (N.D. Ill. 2007) ................................................................................ 8

*Oleksy v. General Elec. Co.*,
    2011 WL 3471016 (N.D. Ill. Aug. 8, 2011) ............................................................... 8

*Orillaneda v. French Culinary Institute*,
    2011 WL 4375365 (S.D.N.Y. Sept. 19, 2011) .......................................................... 7

*OSF Healthcare Sys. v. SEIU Healthcare IL Pers. Assistants Health Plan*,
    2021 WL 7708963 (N.D. Ill. Oct. 4, 2021) ............................................................. 15

*Pable v. Chi. Transit Auth.*,
    2021 WL 4789028 (N.D. Ill. Sept. 13, 2021)........................................................... 13

*Putco, Inc. v. Carjamz Com Inc.*,
    2021 WL 492902 (N.D. Ill. Feb. 10, 2021) .......................................................... 3, 3

*Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*,
    128 F. Supp. 2d 1148 (N.D. Ill. 2001) .................................................................... 13

*West v. Miller*,
    2006 WL 2349988 (N.D. Ill. Aug. 11, 2006)............................................................. 4

**Rules**

F.R.C.P. 26(b)(4)(D)................................................................................................... 12

As detailed in their motion ("Mot.") (ECF No. 607), Plaintiffs have provided, at length, the requisite factual and legal basis required in the Seventh Circuit to compel the targeted "discovery on discovery" sought in this case. Defendants' response brief ("Resp.") (ECF No. 622) presents no legitimate basis to deny Plaintiffs' motion. Despite Defendants' assertions to the contrary (Resp. at 1, 9), Plaintiffs have clearly demonstrated why this discovery is relevant and necessary. Notwithstanding Defendants' sworn declaration containing ultimately false statements about document completion, Defendants' recent "discovery" of tens of thousands of "overlooked" documents has resulted in more questions than answers. To date, Defendants have failed to adequately explain why there are years of missing documents for material witnesses and custodians, seemingly in violation of their document retention policies.

Defendants have weaponized their cryptic document retention policies to obscure what should have been produced in this litigation. In Defendants' response, Plaintiffs learned for the first time that pricing notifications and related correspondence are not "business records" but instead are considered "routine" emails. *See* Section I.C.4., *infra.* Remarkably, at a hearing just last month, Defendants could not even answer the Court's question as to whether they have written document retention policies. ECF No. 616, Nov. 16, 2022 Hr'g Tr: 17:22-18:10. Ultimately this "matters" and is relevant because the lack of key custodial documents potentially deprives Plaintiffs of critical evidence during key time periods in this case. Mot. at 3.

Notably, Defendants provide a specific list of Plaintiffs' document requests and 30(b)(b) topics for both Epiq and Defendants that they find objectionable on the questionable basis they are too broad and involve privileged communications. Resp. at 7, 8. Defendants' position on their objections to certain requests but not others is inconsistent, unclear and speculative. *See* Section I.B., *infra.* Plaintiffs respectfully request the Court grant their motion in its entirety.

1

## I. Plaintiffs' Motion Has Set Forth a Factual Basis to Obtain Discovery on Discovery

### A. Plaintiffs have Provided Specific Evidence of Defendants' Non-Compliance with their Discovery Obligations

A factual basis is required for discovery on discovery and Plaintiffs' motion clearly sets forth that basis. Discovery on discovery in the Seventh Circuit is permitted when a "party's discovery compliance has reasonably been drawn into question, so that there is 'an adequate factual basis' for an inquiry." *Gross v. Chapman*, 2020 WL 4336062, at *2 (N.D. Ill. July 28, 2020) (quoting *In re Caesars Entm't Operating Co., Inc.*, 2018 WL 2431636, at *13 (Bankr. N.D. Ill. 2018)). Defendants argue that mere suspicion is not enough (Resp. at 6), but Plaintiffs' motion provides much more than speculation. *Id.*[1] Plaintiffs provide pages of evidence (*see* Mot. at 1-7, 13-20) regarding Defendants' failure to comply with their discovery obligations, including submitting a declaration with materially false statements about their document production (*id.*, Ex. 4) and the latent discovery and production of *more than 70,000 documents* that Defendants "overlooked." *See* ECF No. 564 at 2.

Defendants provide generic excerpts from mostly out-of-circuit cases that have no factual tether to this case. In fact, the very cases cited by Defendants (Resp. at 6), support the proposition that discovery on discovery should be permitted where a reasonable deduction may be inferred that such discovery is warranted. *See Brown v. Crete Monee Cmty. Unit Sch. Dist.*, 2022 WL 1620024, at *3 (N.D. Ill. May 23, 2022) (citing *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008)) (Resp. at 6); *see also Gross*, 2020 WL 4336062, at *2 (quoting *Hubbard*, 247 F.R.D. at 29)) ("Instead of chasing the theoretical possibility that additional documents exist, courts have

---

[1] Defendants cite *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 2022 WL 2905838, at *3 n.4 (N.D. Ill. July 22, 2022) for the proposition that "discovery need not be perfect, only reasonable." Defendants omit, however, this Court's continued reasoning: "at some point, multiple imperfections—some larger than others—make discovery productions unreasonable." *Id.* Plaintiffs submit that the parties are at that point.

2

insisted that the documents that have been produced permit a reasonable deduction that other documents may exist or did exist and have been destroyed"). Resp. at 5.

Defendants' attempts (*id.* at 7) to distinguish only a few of the cases cited by Plaintiffs (Mot. at 10-11) are without merit. The conflicting statements regarding the litigation hold in *In re Caesars Entm't Operating Co., Inc.*, 2018 WL 2431636, and the discovery process in *In re Whatley v. Canadian Pac. Ry. Ltd.*, 2021 WL 1951003 (D.N.D. May 14, 2021) are directly comparable, for example, to the conflicting sworn statements from Defendants regarding completion of their document production (*see* Mot. at 4-6) as well as other questionable procedures and statements put forth by Defendants. *Id.* at 2, 4, 6-7, 13-20.

Moreover, the "factual basis" upon which the courts granted discovery on discovery in those cases is much more aligned with the facts in Plaintiffs' motion than in the cases relied upon by Defendants. For example, in contrast to this case, in *Gross* (Resp. at 5), the plaintiff provided a three-page motion to compel and failed to cite any caselaw in support. 2020 WL 4336062, at *2. The plaintiff provided only the "naked assertion: '[b]ased on prior production of text messages between [individuals], this production appears suspect'" which the court found to be "the definition of unsupported speculation." *Id.* at *3. In *Brand Energy & Infrastructure Servs. v. Irex Corp.*, 2018 WL 806341, at *2 (E.D. Pa. Feb. 7, 2018), the court denied a request for "discovery on discovery" as the plaintiffs filed their motion to compel after the close of fact discovery. *Id.* at *2 n.5. While the court did not allow "such a prolonged inquiry", it ordered defendants to confirm that they had searched their servers for responsive documents. *Id.* at *2. If they were unable to confirm, the court would then allow searches and production to be made. *Id.*[2] Lastly, Defendants

---

[2] Defendants also attempt to distinguish *Putco, Inc. v. Carjamz Com Inc.*, 2021 WL 492902 (N.D. Ill. Feb. 10, 2021) (Resp. at 7 n.1) by stating that the defendant did not argue the lack of an adequate factual basis. That is irrelevant. This Court determined that (due to recent deposition testimony regarding a deficiency in

failed to address Plaintiffs' argument regarding proportionality (*see* Mot. at 11-13), instead throwing in an unsupported sentence that because Plaintiffs' complaint is subject to a motion to dismiss, such discovery is not proportionate to the needs of the case. *See* Resp. at 7.

**B.        Plaintiffs have Provided Specific Evidence Regarding the Discovery Sought**

It is disingenuous for Defendants to allege that Plaintiffs have provided "*absolutely* no argument or explanation" as to why the Court should compel a response from Defendants or Epiq regarding the requested discovery. Resp. at 7. Defendants' citation to a generic proposition in *West v. Miller*, 2006 WL 2349988, at \*2 (N.D. Ill. Aug. 11, 2006) (*id.*) fails to support their position. Plaintiffs have provided *pages* of evidence (Mot. at 1-3, 4-7, 13-20) detailing an adequate factual basis (as well as the legal basis in this Circuit) to compel the discovery sought.

As noted previously, Defendants listed *specific* document requests and deposition topics for both Defendants and Epiq they contend the Court should not compel them to respond to or produce because they are "hopelessly broad" and "directly ask" for privileged material. Resp. at 7, 8. Not only do Plaintiffs disagree, but Defendants' objections to specific requests (*id.* at 8) but not others[3] is inconsistent and confusing. First, Defendants fail to specify what is "hopelessly broad" about *any* of the requests listed or which of the requests would theoretically involve privileged communications. Second, even if some of the communications are privileged, Defendants and/or Epiq could simply withhold or redact those documents on that basis. Third,

_____

defendant's document production) there was an adequate factual basis to allow deposition questioning on this topic. *Id*. at \*5. The same result should follow here.

[3] In their response at 8, Defendants do *not* specifically include as objectionable Defendants' 30(b)(6) Topics 1-4, 6-8, 15-19 and 22. Mot., Ex. 11 at 4-10. These topics include inquiries into Defendants' document retention, preservation and destruction policies, their systems and/or applications relating thereto, as well as how they govern off-boarding of employees exiting the company; litigation hold policies and/or procedures; inquiries regarding the Supplemental and Historical Archive; and Mimosa. *Id.* Defendants do not specifically include *any* of Plaintiffs' five document requests as objectionable. Mot. Ex. 11 at 11-12. Defendants also do not specifically object to Epiq Doc Requests 1-4, 11, 15, 20, 24-25, and 29 and the majority of 30(b)(6) Topics: 1, 4-8, and 10. Mot., Ex. 13 at 13-16, 23-24 of 87.

4

Defendants are inconsistent in their objections to certain requests but not others.[4] Fourth, Plaintiffs' deposition topics and document requests ultimately cover only a few discrete topics.[5] Finally, Plaintiffs note that many of the requests Defendants find objectionable (Resp. at 8) relate to their and Epiq's potential knowledge of documents being lost or destroyed (*see, e.g.*, Defendants' 30(b)(6) Topics 9, 16, 25, Mot., Ex. 11 at 8-10; Epiq's 30(b)(6) Document Requests 16, 22 and Topics 3, 11, Mot., Ex. 13 at 14-15, 23-24 of 87). Defendants' reluctance to be questioned on this topic reinforces why this discovery is necessary.

## C. Plaintiffs have Established They are Entitled to Discovery on Discovery

### 1. Plaintiffs have Provided the Requisite Basis for Discovery Into Productions from the Supplemental and Historical Archives

Despite Defendants' attempt to change the narrative, Plaintiffs are not delving into Supplemental and Historical Archive issues to simply find out "how this error happened." Resp. at 8. This discovery is necessary because the lack of key custodial documents potentially deprives Plaintiffs of critical evidence during key time periods in this case. Mot. at 3. Moreover, it is disingenuous for Defendants to excerpt the Court's statement at the October 21, 2022 hearing (Resp. at 8) concerning the Supplemental and Historical Archives while ignoring a subsequent exchange immediately thereafter in which Plaintiffs explained exactly why discovery on the

---

[4] For example, Defendants object to 30(b)(6) Topic No. 5 regarding their document retention policies governing access by contractors and vendors (Resp. at 8; Mot. Ex. 11 at 6), but do not specifically object to Topics 1-4 (Mot., Ex. 11 at 4-6) which also cover their document retention policies. Defendants do not include Epiq Doc Requests 1-4 as specifically objectionable, but it is unclear why those requests are not subject to the same theoretical privilege issues as Doc Request 5, for example, to which Defendants specifically object. Mot., Ex. 13 at 13 of 87. In reference to the Mimosa email exchange, Defendants object to Epiq Doc Requests 17, 18 and 19 (Resp. at 8) but not Request 20. Mot., Ex. 13 at 15 of 87.

[5] Defendants' 30(b)(6) Topics address just *three* categories of inquiry. *See* Mot., Ex. 11 at 4, 8, and 10. Defendants' complaints about the number of topics rings hollow: these are topics to be discussed at a deposition, and the inclusion of sub-parts was for clarity. Plaintiffs made only five document requests to Defendants which cover (1) their document retention policies; and (2) litigation holds. *Id.* at 11-12. The majority of Plaintiffs' document requests to Epiq cover just four topics of inquiry. *See* n.18, *infra*.

archives was needed and the Court responded briefing was necessary to determine whether there was evidence to support discovery on discovery. ECF No. 596, Oct. 21 Hr'g Tr: 41:21-42:21. And Plaintiffs have not, as Defendants allege (at 8) relied almost exclusively on comments made at the October 4 hearing. *Id.* The motion is replete with references to and discussion of the Supplemental and Historical Archives (on virtually every page) because the discovery of over 70,000 documents from these archives was the catalyst for further investigation into inconsistencies and missing documents in Defendants' custodial productions. Given Defendants' inadequate, confusing (and even conflicting) explanations about the Supplemental and Historical Archives, document retention policies, and related topics as discussed in Plaintiffs' motion, an inquiry into these issues is appropriate to ascertain whether all responsive documents in this litigation have been produced.[6]

### 2. Plaintiffs are Entitled to Discovery on Defendants' Document Retention Policies

Defendants assert that Plaintiffs have not set forth a factual basis for discovery on Defendants' document retention policies. Resp. at 9-11. Notably absent from Defendants' response is any attempt to address or distinguish *a single case* cited by Plaintiffs. Courts routinely allow discovery as to document retention policies where a defendant has claimed it cannot or has failed to locate documents and has made conflicting statements regarding discovery throughout the litigation. *See* Mot. at 10-11.[7] Moreover, Plaintiffs' motion provides several examples where the

---

[6] Defendants' October 18, 2022 letter (Mot., Ex. 2) provides no clarity, failing to address any of the key questions Plaintiffs still have. *See* Section I.C.4, *infra*. Defendants allege (Resp. at 8) that the letter answers Plaintiffs' question regarding why so many post 2014 documents were produced from the archives; but the pertinent question is not why so many documents were *produced* post-2014; rather, the question has always been why documents are *missing* for certain key time periods and key custodians.

[7] For example, in *AOT Holding AG v. Archer Daniels Midland Co.*, 2021 WL 6118175, at *5 (N.D. Ill. Sept. 3, 2021), the court allowed discovery of document retention policies where the party claimed that certain electronic communications no longer existed or were never saved. The court found that the retention policy was "directly relevant to the location of evidence" for the case and that the absence of certain records made the retention policies "related to those records particularly relevant in this instance." *Id.* at *7. As such, the court allowed the plaintiffs to "explore whether the … retention policy required preservation of

Defendants' described document retention policy appears to strongly conflict with what was produced (or not produced) for several exemplar custodians. *See* Mot. at 14-20; *see also* Section I.C.4., *infra*. Defendants only argument (at 9) as to why their document retention policies should not be produced consists of misplaced reliance on two clearly distinguishable cases.[8]

Defendants' document retention policies are anything but clear, and their supposed explanation (Resp. at 10) demonstrates precisely why. Defendants state that under their policy, "routine emails do not constitute 'business records'" (*id.*), but neither their policy nor their explanation provides a definition of a "business record" versus a "routine email." Nor is there any clarity on exactly how long business records or routine emails are maintained. Instead, Defendants state that "business records are maintained for varying lengths of time ….", and non-business record emails "*may* be retained for up to two years". *Id*. (emphasis added). But Defendants' intentional vagueness throughout this controversy has led the parties and the Court to believe that emails are retained for two years following an employee's termination. Mot. at 15 n.15. *See* ECF No. 616 at 17:7-9; ECF No. 589 at 26:11-15.  In fact, despite motion practice in the past concerning Defendants' document retention policies, and the issue currently being litigated, at the November 16, 2022 hearing, Defendants could not even answer if their document policies were memorialized in writing. *See* ECF No. 616 at 17:22-18:10. As noted by the Court during the hearing, much of

---

the documents at issue … and whether the absence of those records is inconsistent with [the] retention policy for the relevant time period." *Id*.

[8] In *In re Honeywell Int'l, Inc. Sec. Litig*., 230 F.R.D. 293, 302 (S.D.N.Y. 2003), the court denied a motion to compel retention policies where plaintiffs' only argument for production was based on an administrative settlement in an unrelated matter that stated the defendant allegedly altered and destroyed documents. In *Orillaneda v. French Culinary Institute*, 2011 WL 4375365, at *6 (S.D.N.Y. Sept. 19, 2011), the court granted a protective order because the plaintiff failed to identify any specific reasons that defendant's production was deficient and argued in generalities. Plaintiffs here have raised legitimate questions about whether Defendants have complied with their document retention policies. *See, e.g.*, Mot. at 7-20.

the ambiguity surrounding the document retention policies could be resolved if the Defendants

were to simply produce them. *See id*. at 13:5-17.[9]

### 3. Plaintiffs Are Entitled to Litigation Hold Discovery

Discovery "about the existence and timing of litigation holds is routine." *In re Caesars

Entm't Operating Co., Inc*., 2018 WL 2431636, at *12. It is not Plaintiffs' responsibility to argue

that Defendants' litigation hold letters are not privileged; rather it is the party claiming the privilege

bears that burden. *See Oleksy v. General Elec. Co*., 2011 WL 3471016, at *3 (N.D. Ill. Aug. 8,

2011). Litigation hold letters are not *per se* privileged as that determination is based on the *specific

facts* surrounding the documents at issue. *Id*. The defendant in *Olesky*, like Defendants here, relied

on *Muro v. Target Corp.*, 250 F.R.D. 350, 360 (N.D. Ill. 2007) and *Major Tours*, *Inc. v. Colorel*,

2009 WL 2413631, at *2 (D.N.J. Aug. 4, 2009) to argue that the litigation holds were privileged.

But the court in *Olesky* distinguished those cases noting that in *Muro* the litigation holds were

found to be privileged after an *in camera* review. *Id.* And in *Major*, the holds were privileged only

because the party claiming privilege made *an adequate showing* that the hold contained privileged

material. *Id*. Defendants here have made no showing of privilege.

### 4. Plaintiffs Provided Evidence that Custodial Documents were Improperly Deleted

G̲A̲Y̲L̲E̲ J̲O̲H̲N̲S̲T̲O̲N̲. Ms. Johnston's declaration states that "as a general matter," she did

not save or folder emails like manufacturer pricing notifications or correspondence relating thereto.

ECF No. 622-5 at ¶ 8. In fact, her "general practice" was to "receive and review the

correspondence, forward it to [her] team (if necessary, and/or respond to the correspondence (if

---

[9] Plaintiffs additionally note that they did not state that the 2015 Texas Civil Investigative Demand ("Texas CID") "conflicts" with the description provided in the Initial Disclosures. Resp. at 11. Plaintiffs simply stated that the description of the document retention policies provided in the Texas CID is *different* than the description provided in the Initial Disclosures in the instant litigation. Mot. at 2, 17 n.18. Defendants failed to provide any explanation as to why there would be different descriptions for document retention policies.

required). [She] would then delete the email." *Id.* Ms. Johnston's declaration continues that "receiving pricing notifications" was "standard and routine" and thus they were not saved. *Id.* at ¶ 9. Notably, Ms. Johnston's declaration *only* references "pricing notifications" or "similar correspondence" relating thereto, significantly omitting mention of *any other type* of email or document. Additionally, it is highly questionable that pricing notifications and related correspondence are not considered business records because in order to implement Acthar price increases, coordination throughout Express Scripts was necessary.[10] This begs the question how Ms. Johnston knew whether or not her emails and documents were considered "business records" that should have been retained before she categorically deleted them. And even if she did personally delete them, a company like Defendants would presumably have a backup system in place to safeguard against such potential violations of their retention policies. Defendants remain silent as to all of these questions.

Defendants state the reason Ms. Johnston failed to retain her 2008-2012 custodial documents is because she was not subject to a litigation hold in 2014. Resp. at 15. This statement, however, conflicts with Defendants' position on Mr. Osborne who *was* on a previous litigation hold, yet there are still inexplicably no older documents for him. *See id.* at 17. Defendants also allege that Plaintiffs "baldly assert" that Ms. Johnston's documents were required to be retained pursuant to Defendants' document retention policies (*id.* at 15 citing Mot. at 15-16); however, those pages of Plaintiffs' motion question what document retention policies applied during the 2008-2012 time period such that not one document or email was retained from the President of CuraScript for a four-year period. It defies logic to assume that none of these documents – some of which were presumably business records – were retained and subject to the litigation hold for

---

[10] *See* Aug. 18, 2022 Johnston Depo Tr.: 183:11-184:22; 212:16-214:6 attached hereto as Ex. A.

Rockford's case filed in April 2017. Likewise, Defendants claim that Plaintiffs "offer[] a twisted reading" of Ms. Johnston's deposition testimony regarding access to her documents dating back to 2008 (citing Mot. at 14). Plaintiffs accurately represented Ms. Johnston's testimony, wherein she stated she had full access to her files and emails as of September 2017.[11]

**ROBERT OSBORNE.** The facts regarding Rob Osborne are that: (1) he is a current employee placed on a litigation hold in the 2012-2013 timeframe; (2) who has not produced *a single email* prior to 2011; (3) and is a crucial witness in this case, with substantial involvement in CuraScript SD and Acthar dating back to at least 2007 – all facts that Defendants concede or fail to address. While Plaintiffs understand that the "Historical Archive is not a complete set of all emails dating back to 2007" (Resp. at 17), it strains credulity to imagine that at the time the 2012-13 litigation hold was implemented, even though Mr. Osborne had worked for the company for over seven years in a high-ranking position, he did not have *any* pre-2011 emails. Notably, Defendants failed to include a declaration for *current employee* Mr. Osborne explaining his practice. Based on the timing of the 2012-13 litigation hold, Defendants' explanation leaves only two possibilities: (1) that Mr. Osborne had not sent or received *a single email* that mandated its retention during the preceding seven years; or (2) he deleted all of his emails (including those that would have constituted business records) from 2005 through 2011 before the litigation hold was implemented – both implausible scenarios, especially for Express Scripts' Vice President of Business Development.

Defendants also misconstrue Plaintiffs' *example* of Mr. Osborne accessing a 2007 document in 2014. *See* Mot. at 20; Resp. at 18. This simply demonstrates that at the time the 2014

---

[11] Plaintiffs provided examples of investigations and litigations involving Defendants (Mot. at 16-17) (including a subpoena CuraScript received for documents in 2013; *see* Mot. at 16 n.17), demonstrating how unlikely it is that Defendants (particularly Ms. Johnston as President of CuraScript from 2008-2017) had carte blanche to routinely delete all of their documents and emails for years at a time.

email was written, Mr. Osborne could access his own documents dating back to at least 2007. If he could access a 2007 PowerPoint regarding Acthar, there should be other 2007 Acthar related documents, including emails.[12] The important point here (deliberately sidestepped by Defendants) is that in 2014 – when Defendants admit the Mimosa email server transfer to Epiq was ostensibly complete – Mr. Osborne *could* still access some of his documents from 2007. This example is inconsistent with Defendants' position that all pre-2011 documents had already been deleted at the time Mimosa was decommissioned and transferred to Epiq in 2014.

**MELISSA BEATTY.** Defendants allege that Ms. Beatty's documents were simply not retained as a result of "the normal document retention practices for departing employees." Resp. at 16.[13] As discussed previously, what constitutes Defendants' "normal document retention practices" is wholly unclear. *See, e.g.*, Mot. at 8, n.10; Ex. 15. Defendants provide no explanation as to why there are *no custodial documents at all* for Ms. Beatty who left Defendants' employment a mere nineteen months before Rockford filed its complaint. This would mean every single document ever created, sent, received, or otherwise maintained by Ms. Beatty during her nearly ten-year career at Express Scripts was a non-business record email which (implausibly) was deleted by Ms. Beatty and/or Defendants.

Defendants also allege that Ms. Beatty has not been treated as an important witness to Plaintiffs' case. Resp. at 16-17. Due to the coordinated discovery in this case, requests made by Rockford pertaining to Ms. Beatty apply equally to MSP Plaintiffs. Defendants additionally argue

---

[12] Defendants' claim that a "stand-alone version of this very document" somehow makes up for its omission from Mr. Osborne's custodial files (Resp. at 18) is simply a deflection. The larger point is that it completely undermines Defendants' argument regarding Mimosa and should have been produced from Mr. Osborne's custodial files, as should other emails from this time period.

[13] Plaintiffs erroneously stated that Ms. Beatty did independent consulting work for Defendants during September 2015 to August 2016 which Ms. Beatty corrected in her declaration. ECF 622-6 at ¶ 4. This does not change the substantive issue that Ms. Beatty "left Defendants' employment in September 2015 – nineteen months before Rockford filed suit." Mot. at 19.

that Plaintiffs are delinquent in their inquiry concerning Ms. Beatty because Defendants informed Plaintiffs in March 2020 that there were no Beatty custodial documents. *See id.* at 19, Ex. A. *Despite* this information, Rockford *still* insisted that Ms. Beatty be included as a custodian at that time because *she should have had documents to produce.* Moreover, at this time (February 2020), even *Defendants* did not know whether that statement was true because it was not until mid-September 2022 that Defendants allegedly learned the Historical and Supplemental Archives were overlooked. *See* Mot. at 5, Ex. 10; ECF No. 564. Thus, any statement made by Defendants in 2020 about the availability of documents for certain individuals must be taken with a grain of salt.[14]

## II.   Plaintiffs are Entitled to Discovery from Epiq

Defendants allege (Resp. at 18-19) that Plaintiffs have not established that discovery of their document vendor, Epiq, is warranted, citing an inapplicable federal rule and inapposite caselaw.[15] Defendants argue that F.R.C.P. 26(b)(4)(D) – a rule that overwhelmingly governs discovery of an *expert* retained in anticipation of litigation – somehow applies to Epiq and requires Plaintiffs to prove "exceptional circumstances" under which it is impracticable for Plaintiffs to obtain the requested information by other means.

First, Defendants have failed to establish that Epiq is an expert retained for litigation purposes, only alleging that Epiq has been employed by Defendants since at least 2014 (*see* Resp. at 18). Thus, the rule they cite is inapplicable to this case. *See McNally Tunneling Corp. v. City of*

---

[14] Defendants' citation on this point, *Agility Pub. Warehousing Co. K.S.C. v. Dep't of Def.*, 2017 WL 1214424 (D.D.C. Mar. 30, 2017) (Resp. at 17), is unavailing because the court was deciding the propriety of a motion for remedial sanctions, not a discovery motion.

[15] Defendants cite *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 2013 WL 791432 (N.D. Ill. Mar. 4, 2013) (Resp. at 18), a case that supports *Plaintiffs'* position. In *Plasma*, the court denied plaintiffs' request for the appointment of a third-party auditor of defendant's e-discovery vendor but *granted* plaintiffs' request to take two separate depositions of defendant to "assess whether or not there was full compliance in good faith with preservation and production obligations." *Id*. at *5.

*Evanston*, 2002 WL 59115, at *2 (N.D. Ill. Jan. 14, 2002).[16] Second, even assuming *arguendo* that

the standard applies, and Plaintiffs must prove "exceptional circumstances" to obtain discovery

from Epiq, such circumstances exist here. On this point, Defendants rely on yet another case that

supports *Plaintiffs'* position: *Pable v. Chi. Transit Auth.,* 2021 WL 4789028, at *2 (N.D. Ill. Sept.

13, 2021). In that case, where the defendant did *not* contest application of F.R.C.P. 26(b)(4)(D) to

a third-party vendor, the court found that exceptional circumstances existed and *allowed written

and oral discovery* because the requested discovery sought evidence which may prove the

producing party made contradictory statements about the availability of the requested documents.

*Id*. The court held that the vendor was "in a unique position" to answer questions, including "what

instructions it received from [the producing party] with respect to [the production]." *Id*. at *3-4.

Here, Epiq is in a unique position to provide the same type of information to Plaintiffs, including

providing clarification regarding the McCaffrey Declaration's ultimately incorrect statements (*see*

Mot., Ex. 4), as well as information regarding the Historical and Supplemental Archives.

Defendants have placed Epiq's knowledge of these archives directly in contention.[17]

Defendants attempt to downplay the role of Epiq regarding the Historical and Supplemental

Archives. However, by Defendants' own admission, the Historical Archive was migrated to and

maintained at Epiq since 2014. *See* Resp. at 18. Defendants assert that Plaintiffs have

"misunderstood" that the Supplemental Archive resided with Epiq (as the Historical Archive did)

---

[16] *See Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 128 F. Supp. 2d 1148, 1151 (N.D. Ill. 2001)
(F.R.C.P. 26(b)(4)(D) covers "experts retained or specially consulted in relation to trial preparations.").

[17] *See, e.g.*, Defs' Notice, ECF No. 564 at 2: "On Saturday, the Express Scripts Entities also learned that
one legacy of Express Scripts' Historical email archive (the "Historical Archive") that resides with Express
Scripts' e-discovery vendor was not searched for collection in this case." *See also* Mot. at 13-14, Section
II.A, including discussion that at an Oct. 4, 2022 hearing (ECF No. 589, 23:1-24:22), when asked how
production for two custodians from the Supplemental Archive was made weeks prior to Defendants' alleged
discovery that the Supplemental Archive had been overlooked for document collection, Defendants, pointed
directly to Epiq: "the vendor pulled in the documents from that supplemental archive for those productions."

based on Defendants' statements to the Court regarding Epiq producing documents from the Supplemental Archive weeks before Defendants' supposed discovery of the archive. *See supra* n.17. So, if Plaintiffs' natural assumption that the Supplemental Archive (like the Historical Archive) resided with Epiq is incorrect, even *more* questions are now raised about its location and Epiq's access to it – such as why and how Epiq was able to access and produce documents relevant to this litigation from a location other than its own when Defendants "overlooked" the same archive. This serves to underscore exactly why discovery on discovery is needed. At the very least, it undermines Defendants' statement (Resp. at 19) that Epiq has no independent authority when it comes to Defendants' document production.

Lastly, Defendants argue that 29 document requests of Epiq are "unnecessary." *Id.* at 18. However, the majority of the requests ultimately cover only a few, discrete issues.[18] Finally, Defendants argue that any discovery from Epiq would be seeking privileged information,[19] but, as discussed above, if that is the case, such material could simply be withheld or redacted.

### III. There is No Basis for Defendants' Alternative Request to Issue a Stay Precluding Plaintiffs from Receiving Discovery on Discovery

Should the Court grant Plaintiffs' motion, Defendants have requested a stay of the discovery at issue following resolution of the pending motion to dismiss. *See* Resp. at 20. In

---

[18] The Epiq document requests can be reduced to those relating to: (1) statements made in the McCaffrey Declaration (Requests 7, 9, 10, 12, and 13); (2) statements made in Defs' Notice Re: Status of Doc Prod (ECF No. 564) (Requests 21, 24, 25, 26, and 27); (3) the role of Epiq, if any, in the migration of the Mimosa email exchange (Requests 17, 18, 19, 20); and (4) the creation, maintenance, and/or searching of the Historical and Supplemental Archives (Requests 1, 2, 3, 4, and 15). *See* Mot., Ex. 13 at 13-16 of 87.

[19] Defendants' cases on this point are unavailing. First, *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 296 F. Supp. 3d 1230 (D. Or. 2017) is an out of circuit case that proves the unremarkable point that services performed for counsel as litigation support could be privileged. However, under F.R.C.P. 26(b)(4)(D)(ii), discovery into such matters is expressly permitted where exceptional circumstances are present. Second, Defendants use *In re Plasma-Derivative Protein Therapies Antitrust Litig.* to draw a false equivalency between discovery of a third-party vendor – in this case, Epiq – and seeking discovery of opposing counsel. As Plaintiffs are not seeking discovery from opposing counsel the argument in that case is irrelevant.

14

support of this request, Defendants cite to a sole case, *OSF Healthcare Sys. v. SEIU Healthcare IL Pers. Assistants Health Plan*, 2021 WL 7708963, at *2 (N.D. Ill. Oct. 4, 2021) for a generic proposition about staying discovery pending a motion to dismiss. *Id.* Notably, Defendants omit the following sentence in *OSF* that, "[t]he court enjoys broad discretion in controlling discovery and [its] determination of whether to stay discovery *is case specific*." *Id.* (citing *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336-37 (N.D. Ill. 2005*)* (emphasis added)). The *OSF* court *permitted* disclosure of the administrative record while staying any *additional* discovery. *Id.*

Under Defendants' logic, all discovery pertaining to Plaintiffs' case should be stayed, including Defendants' pursuit of documents from former assignors, now absent class members. Moreover, although Defendants attempt to characterize these discovery requests as unique to MSP Plaintiffs, by repeatedly pointing out that Plaintiffs' motion was a "companion" to Rockford's sanctions motion (Resp. at 1; *see also* ECF No. 619 at 3), Defendants infer that that the requested discovery affects *both* cases. As stated previously, these discovery issues directly impact this litigation because they potentially deprive Plaintiffs of critical evidence in this case. And, as noted by Plaintiffs, if Defendants have violated their document retention and/or litigation hold policies, they should not be permitted to question witnesses at upcoming depositions on the time period and events for which they had no custodial documents. *See* ECF No. 616 at 11:22-12:7. Defendants have consistently failed to provide clear or sufficient responses to Plaintiffs' questions and allowing Plaintiffs' requested discovery will finally put these unanswered questions to rest.

## CONCLUSION

For the foregoing reasons and those in Plaintiffs' opening brief, Plaintiffs respectfully request that the Court grant Plaintiffs' motion in its entirety and deny Defendants' alternative request to stay this discovery on discovery.

Dated: December 16, 2022        Respectfully submitted,

*/s/ Peggy J. Wedgworth*
Gary M. Klinger
Anna K. Higgins*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe St., Ste. 2100
Chicago, IL 60606
(312) 593-3354
gklinger@milberg.com
ahiggins@milberg.com
*\* admitted in Louisiana only*

Peggy J. Wedgworth (*pro hac vice*)
Michael Acciavatti (*pro hac vice*)*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
405 East 50th Street
New York, NY 10022
(212) 594-5300
pwedgworth@milberg.com
macciavatti@milberg.com
*\* admitted in Pennsylvania only*

*Attorneys for Plaintiffs and the Proposed Class*

16

<u>**CERTIFICATE OF SERVICE**</u>

I, Peggy J. Wedgworth, an attorney, hereby certify that on December 16, 2022, I caused a true and correct copy of the foregoing **PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL DEFENDANTS AND NON-PARTY EPIQ SYSTEMS, INC. TO PRODUCE DOCUMENTS AND A CORPORATE REPRESENTATIVE FOR DEPOSITION AND OPPOSITION TO A STAY OF DISCOVERY ON DISCOVERY**, to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth