**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| SERIES 17-03-615, a designated series of MSP RECOVERY CLAIMS, SERIES LLC, *et al.*, | |
| *Plaintiffs,* | No. 3:20-CV-50056 |
| *v.* | HONORABLE IAIN D. JOHNSTON |
| EXPRESS SCRIPTS, INC., *et al.*, | |
| *Defendants.* | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are three motions and an objection to an order of the Magistrate Judge, all pertaining to MSP Recovery's bid for class certification. In support of class certification, MSP offers an expert report; Express Scripts[1] too offers an expert report in opposition. Each side mounts a *Daubert* challenge against the other.

For substantially the same reasons as the damages model offered by the City of Rockford in similar litigation was excluded,[2] the Court likewise finds that Dr. Russell W. Mangum III's damages models are unreliable under Rule 702 and must be excluded. Express Scripts' *Daubert* motion is therefore granted to that extent. That alone forecloses the certification of MSP's proposed classes, so the motion for class

---

[1] The defendants include Express Scripts, Inc., Express Scripts Holding Co., Accredo Health Group, Inc., CuraScript, Inc., Priority Healthcare Distribution, Inc., and United BioSource Corp., LLC—for simplicity, they shall be referred to collectively as Express Scripts.

[2] *City of Rockford v. Mallinckrodt ARD, Inc.*, No. 3:17-CV-50107, 2024 WL 1363544, at *5-10 (N.D. Ill. Mar. 29, 2024).

certification is denied. MSP's *Daubert* motion and Express Scripts' objection are thus moot and accordingly denied without prejudice.

## BACKGROUND

MSP brings this putative class action under the Sherman Act and the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), alleging that Mallinckrodt (a pharmaceutical manufacturer) and Express Scripts (a drug distributor, among other things) conspired to act anticompetitively, and thereby raised the price of one of Mallinckrodt's drugs—Acthar—to a supracompetitive level. Dkt. 706 at 1. MSP is the assignee of a claim held by a third-party payor that alleges it paid a supracompetive price for Acthar. *Id.* Mallinckrodt is no longer a defendant because the claims against it were discharged in bankruptcy. Dkt. 532.

MSP moves for the certification of two classes seeking damages—(1) a direct purchaser class and (2) an indirect purchaser class.[3] Dkt. 706 at 1. It offers the opinions

---

[3] The classes are defined as follows:

(1) *Direct purchaser class.* All third-party payers (TPP) who, at any time from August 27, 2007 to the present, on behalf of the TPPs' Medicare Advantage Plan beneficiaries and Medicare Part D Prescription Drug Plan beneficiaries, through Express Scripts as Pharmacy Benefit Manager (PBM), paid some or all of the purchase price of Acthar (or later provided reimbursement for same under a legal obligation to do so).

(2) *Indirect purchaser class.* All third-party payers (TPP) who, at any time from August 27, 2007 to the present, on behalf of the TPPs' medical and/or pharmacy benefit plan beneficiaries, and through a Pharmacy Benefit Manager (PBM) other than Express Scripts, paid some or all of the purchase price of Acthar (or later provided reimbursement for same under a legal obligation to do so).

Dkt. 706 at 1.

of Dr. Russell W. Mangum III of the economics consultancy Cirque Analytics in support. Dkt. 710 Ex. 1 at 1.

## LEGAL STANDARD

### I. Rule 23

To be certified, any proposed class must satisfy several requirements. All proposed classes must first satisfy the four prerequisites set out in Rule 23(a): (1) numerosity, (2) typicality, (3) commonality, and (4) adequacy of representation. If Rule 23(a) is satisfied, a proposed class must further be among one of the three types set out in Rule 23(b). *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

In assessing whether these requirements are met, the Court does not accept the plaintiff's allegations as true but must rigorously ensure the factual sufficiency of the plaintiff's motion for class certification, resolving those factual disputes that are material to the class certification decision, even if such an inquiry trenches on the merits of the action. *See Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). The proponent of the class bears the burden of showing that the elements of class certification have been proven by a preponderance of the evidence. *See Messner*, 669 F.3d at 811.

### II. *Daubert* Motions and Class Certification

A "full *Daubert* analysis" must be undertaken in advance of deciding class certification when the reliability of expert evidence that bears on the class certification decision is challenged. *Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 814 (7th Cir. 2010). Still, *Daubert* motions need be decided at this juncture only to the extent that

they are "critical"—that is, "important to an issue decisive"—to the class certification decision. *Messner*, 669 F.3d at 812-13.

### III. Federal Rule of Evidence 702 and *Daubert*

Rule 702 governs the admissibility of expert testimony, requiring, among other things, that an expert's opinion be the "product of reliable principles and methods" that are "reliably applied" to the facts of the case at hand. Fed. R. Evid. 702. The Supreme Court has explained that the overarching aim of the Court's "gatekeeping" function under Rule 702 and the *Daubert* regime is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). The proponent of an expert's testimony bears the burden of establishing its admissibility by a preponderance of the evidence. *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 782 (7th Cir. 2017).

### ANALYSIS

Both proposed classes seek damages and look to be certified under Rule 23(b)(3). Dkt. 706 at 12-13. This requires a showing that (1) the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members, and (2) that a class action is superior to other available methods of resolving the controversy. *Messner*, 669 F.3d at 811. The predominance analysis always begins with the elements of the underlying claims. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

4

Common to all of MSP's claims is the requirement that it show the extent of its harm from Express Scripts' illegal conduct—in other words, the damages. *See Messner*, 669 F.3d at 815 (federal antitrust claims); *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1097 (11th Cir. 2021) (FDUTPA claims). Under *Comcast Corp. v. Behrend*, a failure to "establish[] that damages are capable of measurement on a class-wide basis" precludes a finding of predominance. 569 U.S. 27, 34 (2013).

## I. The Proposed Damages Models

Mangum proposes two ways of estimating class damages—

1. *The "legacy" approach.* Under this method, but-for prices (i.e., those that would have obtained in the absence of illegal conduct by Express Scripts) are derived formulaically from a procedure whose first step is the inflation of the wholesale acquisition cost (WAC) of Acthar at the beginning of the alleged conspiracy by 8% per year through 2022. This is said to be reasonable because in 2006, internal Mallinckrodt[4] documents forecasted yearly increases at least that great until 2011. Dkt. 710 Ex. 1 at 82.

2. *The "benchmark" approach.* Under this method (also known as the yardstick approach), but-for prices are similarly derived from a procedure whose first step is to inflate the pre-conspiracy WAC by the growth in the pharmaceutical producer price index (PPI), a measure of price level based on data collected by the Bureau of Labor Statistics. The benchmark approach depends on identifying a similar market—

---

[4] Strictly speaking, it was Questcor's projection; Mallinckrodt merged with Questcor in 2014. Dkt. 706 at 1 n.3.

5

unaffected by the illegal conduct at issue—which can be taken as a counterfactual proxy for the market at issue, by which but-for prices can be estimated.

Mangum asserts that pharmaceutical prices are driven primarily by "demand and the availability and cost of therapeutic substitutes." Accordingly, the pharmaceutical industry as a whole is a reasonable benchmark because of Acthar's "long history and lack of novelty as a therapy and its relatively limited patient base"; thus, rather than using "competing treatments in Acthar's main therapeutic areas" as benchmarks, the PPI—which is "broader," containing a "wide spectrum [of] drugs"—is more appropriate, and "may even overstate Acthar's but-for growth in prices." *Id.* at 84-85.

## II. The Proposed Models Are Not Reliable

Both models fail to satisfy Rule 702. The "legacy" approach is not reliable for at least two related reasons. First, it lacks what Express Scripts refers to as "empirical validation" of the assumptions underlying the projected 8% price increase per year. Dkt. 807 at 8. The 2006 planning document was conditional and predictive; this is evident from the fact that it also mooted other possible pricing strategies. *See* Dkt. 710 Ex. 1 at 81-83. Mangum fails to identify any of the conditional assumptions underlying the 8% plan, which obviously precludes any assessment—any "empirical validation"—of whether the assumptions obtained, and thus whether a but-for price increase of 8% each year is a reliable estimate. *Cf. Target Mkt. Pub., Inc. v. ADVO, Inc.,* 136 F.3d 1139, 1145 (7th Cir. 1998) (finding no abuse of discretion in a district court's exclusion of an expert's opinions as to damages that, although regarding forecasted profits and not a unilateral pricing decision, depended on "certain assumptions that had not yet, and might never, come to pass"); *Tawfilis v. Allergan, Inc.,* No.

815CV00307JLSJCG, 2017 WL 3084275, at *4 (C.D. Cal. June 26, 2017) (refusing to exclude a similar analysis by Mangum based on a pharmaceutical company's planning document where he in fact analyzed the assumptions underlying the projections, did not "appear to have overlooked any assumptions or documents in his analysis," and explained "why he did not incorporate other [company] documents or additional economic variables into his analysis").

Mangum evinces awareness of the importance of this step in his discussion and rejection of another potential pricing strategy proposed in the 2006 planning document—an increase by a multiple of four to five times Acthar's initial price—which would have greatly reduced the aggregate damages figure. He concludes that such an increase would have been "unlikely" because "the triggering event" for it—receiving FDA approval to market Acthar to treat infantile spasms—"failed to materialize." *Id.* at 83. Unless the assumptions undergirding the projected 8% price increase are similarly grappled with, there is no way of knowing whether that projection represents a reliable counterfactual for Mallinckrodt's behavior, and thus a reliable estimate of but-for damages on the facts of this case.

Secondly, the 2006 document was only a five-year plan, but Mangum projects an annual 8% price increase through 2022. *Id.* at 84. That the 8%-increase-per-year pricing strategy would persist for this long is an unreasoned opinion. For it to be a reliable conclusion, we would have to know something about (1) what Mallinckrodt expected to be the case from 2006-2011; (2) what in fact was the case during that time; (3) how, if at all, any divergence between (1) and (2) might reasonably be expected to have

changed its behavior; and (4) whether and to what extent (1) through (3) can be extrapolated from to predict the but-for price over the succeeding decade. Here, nothing connects the existing data (such as they are) to the extrapolated conclusion except "the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Mangum's proposed "legacy" approach therefore must be excluded.

As for the "benchmark" approach, its reliability "hinges on the extent to which it can stand in for the market under consideration . . . but for the alleged anticompetitive conduct, *ceteris paribus*." *City of Rockford*, 2024 WL 1363544 at *7. If there is "too great an analytical gap between the facts of the case and the benchmark chosen"—such that it cannot be said that the prices of the two markets "would move in tandem" but for the anticompetitive conduct—an expert's opinion to that effect is not reliable. *In re Wholesale Grocery Prod. Antitrust Litig.*, 946 F.3d 995, 1002 (8th Cir. 2019).

As was true of the expert's use of the PPI in *City of Rockford v. Mallinckrodt*, Mangum's selection of it as a counterfactual yardstick is "fundamentally unreasoned." 2024 WL 1363544 at *7. Mangum asserts that "demand and the availability and cost of therapeutic substitutes" are the prime determinants of pharmaceutical prices. Dkt. 710 Ex. 1 at 84. If that is so, he must establish that the characteristics of the drugs composing the PPI bear a rough similarity to Acthar with respect to those characteristics for it to be a reliable proxy for Acthar's but-for prices throughout the alleged conspiracy. No such analysis was carried out. Further, he must establish that any other likely, nonconspiratorial determinants of price—market power, for

8

instance—were irrelevant, or if not, that they somehow be accounted for, by a regression or otherwise. *City of Rockford*, 2024 WL 1363544 at *7-10. Mangum "neither employed" any analytically rigorous methods "nor explained why he hadn't." *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005). For these reasons, the "benchmark" approach he proposes does not exhibit the same "level of intellectual rigor that characterizes the practice of an expert in the relevant field" and must be excluded. *Kumho*, 526 U.S. at 152.

### III. Class Certification Is Denied

With Mangum's damages models excluded—the only evidence regarding damages common to the class—MSP cannot carry its burden as to predominance. See *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667 (9th Cir. 2022); *City of Rockford*, 2024 WL 1363544 at *10. Individual damages calculations will "inevitably overwhelm questions common to the class" with no common evidence, *Comcast*, 569 U.S. at 34, so certification of the two proposed damages classes under Rule 23(b)(3) is denied.

### CONCLUSION

MSP's motion for class certification is denied. Express Scripts' *Daubert* motion is granted as to Mangum's opinion concerning the calculation of damages for the classes. The remainder of Express Scripts' *Daubert* motion, as well as MSP's *Daubert* motion challenging Dr. Mark Israel's opinions, are denied without prejudice as unnecessary to the class certification decision. To the extent that the opinions not addressed continue to be relevant, the *Daubert* challenges may be renewed. The

objection to the Magistrate Judge's order denying Express Scripts a surreply is denied as moot.

Date: April 26, 2024

_____

HONORABLE IAIN D. JOHNSTON
*United States District Judge*